# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Gutierrez*, 2011 IL App (1st) 093499

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAZARO GUTIERREZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1–09–3499 |
| Filed | June 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not err in denying defendant's request for leave to file a successive postconviction petition alleging ineffective assistance of counsel in failing to inform him of the immigration consequences of a guilty plea and that the trial court's failure to inform him of the immigration consequences of a guilty plea rendered his plea involuntary and unknowing, since the claims raised by defendant did not involve a constitutional right and were not cognizable in a postconviction proceeding, and consequently, he could not establish prejudice under the cause-and-prejudice test. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 05–CR–999201; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robin Price Robertson, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan Spellberg and Mari Hatzenbuehle, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. |
| | Presiding Justice Cunningham and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Lazaro Gutierrez appeals from the circuit court's denial of his request for leave to file a successive postconviction petition. Here, defendant argues: (1) he established cause and prejudice with respect to his claims of ineffective assistance of counsel, where counsel failed to inform him of the possible immigration consequences of his plea; (2) he established cause and prejudice with respect to his claim that his plea was not knowingly or voluntarily entered because the trial court failed to inform him of the potential immigration consequences as required by statute; and (3) the $50 State's Attorney fee was improperly imposed and should be vacated. For the following reasons, we affirm the judgment of the circuit court denying defendant leave to file his successive postconviction petition, but vacate the $50 State's Attorney fee imposed.

¶ 2                                    BACKGROUND

¶ 3    Defendant was indicted with eight counts of first degree murder for his participation in the murder of Isidro Rodriguez on November 2, 2003. Prior to trial, defendant indicated that he wished to participate in a Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 1997)) conference. After the conference, defendant expressed a desire to enter a plea of guilty to one count of first degree murder. The trial court admonished defendant about the rights he would be relinquishing if he chose to plead guilty, including the right to a jury trial and the right to have his guilt proven beyond a reasonable doubt by the State. The court also explained defendant's rights to confront witnesses, testify, and present a defense. Defendant stated that he understood. The court then went on to explain the possible penalties associated with pleading guilty to first degree murder and sought assurance from defendant that he was acting of his own accord and had not been unduly influenced in deciding to plead guilty. Defendant responded, "I understand everything." The State then presented a factual basis for the plea.

"If called to testify, the State would present a family member of Isidro Rodriguez

-2-

who would indicate that Mr. Rodriguez was born on September 1st of 1957 and was in good health prior to November 2nd, 2003, prior to 3:45 a.m.

The State would present the testimony of Doctor Aldo Fusaro; that he performed the examination or autopsy on the body of Mr. Isidro Rodriguez. To a reasonable degree of medical certainty, he would indicate that the cause of death was four gunshot wounds and that the manner of death was homicide.

Your Honor, the State would further present the testimony of Assistant State's Attorney Victoria Ciszek; that she interviewed the defendant who she would identify in open court, Mr. Lazaro Gutierrez, on April the 4th of the year 2005; that at that time, she subsequently took a videotaped statement from this defendant.

In that videotaped statement, in summary and not verbatim, this defendant indicated that he together with a co-defendant by the name of Rosendo Ruiz had decided to perform a robbery. He indicated that Mr. Ruiz was the person who had the gun. That further they located this victim and they located him at the address of this incident where the murder occurred, which is 6050 South Sawyer in Chicago, Illinois, on November 2nd of 2003, at 3:45 in the a.m.

This defendant indicated that his role was to be a lookout, and he was to look out for the police and the neighbors. This defendant in that videotaped statement indicated that it was his partner, Rosendo Ruiz, who exited the car and who subsequently shot the victim.

The State would further present the testimony of the eyewitness to this case. That eyewitness is a person by the name of Mr. Phillips. Mr. Phillips would indicate that he was the individual who left the car; that he would identify this defendant, Mr. Gutierrez, as the person he saw leave the car; that he subsequently heard shots and he looked out his window and he saw this defendant, Mr. Gutierrez, as the person who reentered the car with the gun in his hand.

Finally, Your Honor, the State would present the testimony of Detective O'Donovan with the Chicago Police Department. He would indicate that he was assigned to an unrelated case that occurred on November 6th of the year 2004 at 2154 South Ashland. He would identify the defendant as the offender in that case.

He would further indicate that a gun was recovered as a result of that incident; that gun was subsequently sent to the Illinois State Police; that on that gun, first of all, was this defendant's palm print; that further on that gun was the blood that subsequently the Illinois State Police performed a comparison and this defendant's DNA or profile matched the DNA from the profile that was found on the gun.

Finally, that that gun was tested and that gun was found to be the murder weapon in this case."

¶ 4   The court found a sufficient factual basis for the plea and entered a finding of guilty. The court sentenced defendant to 35 years' imprisonment in accordance with the terms of the agreement reached in the Rule 402 conference. The remaining counts of the indictment were dismissed. The court informed defendant that in order to appeal his guilty plea or sentence, he must first seek permission to vacate the judgment and withdraw the plea of guilty within

30 days.

¶ 5 Defendant did not appeal his conviction or file a motion to withdraw his guilty plea. On April 19, 2007, defendant filed a *pro se* postconviction petition alleging that trial counsel failed to explain the case to him and lied to him so that he would accept the plea bargain. The court denied the petition as frivolous and patently without merit in a written order on June 19, 2007. The court found defendant's claims were belied by the record and noted that "petitioner's own words indicate that his plea was entered knowingly and with a full understanding of each consequence *** and result therefrom." The court then issued an order assessing court costs and fees in the amount of $155 for filing a frivolous petition, which included a $50 State's Attorney fee pursuant to section 4–2002.1 of the Counties Code (55 ILCS 5/4–2002.1 (West 2006)).

¶ 6 Defendant filed a "Motion for Leave to File a Late Notice of Appeal," which was grated on October 23, 2007. Thereafter, the State Appellate Defender was granted leave to withdraw as counsel and this court affirmed the judgment of the circuit court on January 9, 2009. *People v. Gutierrez*, No. 1–07–2814 (2009) (unpublished order pursuant to Supreme Court Rule 23).

¶ 7 On June 30, 2009, defendant filed an "Application for Leave to File a Successive Petition for Post Conviction Relief." In this application, defendant stated that he is a Mexican citizen living in the United States as a resident alien, and he included copies of his identification cards. He also attached a copy of the police report made following his arrest, which indicates that he was born in Mexico. In his application, defendant alleged his constitutional rights were violated because the arresting officers failed to contact the Mexican Consulate as mandated by the Vienna Convention and that trial counsel was ineffective for failing to raise this issue. In addition, defendant alleged that counsel was ineffective where he failed to notify defendant that his guilty plea would subject him to deportation. Defendant explained that had he been given this information, he would have gone to trial because the evidence against him was not overwhelming. In addition, defendant stated that the trial court violated his right to due process because it failed to inform him of the possible deportation consequences of his plea. Defendant alleged that this error precluded him from entering his plea knowingly and intelligently.

¶ 8 Defendant explained that he did not raise these issues in a previous postconviction petition because he "is uneducated, [and] he didn't know that these issues existed at the time of his first postconviction." Furthermore, defendant stated that his trial and appellate attorney failed to raise these issues. The trial court denied defendant leave to file finding that defendant failed to establish cause and prejudice as required by section 122–1(f) of the Code of Criminal Procedure of 1963 (725 ILCS 5/122–1(f) (West 2006)). Specifically, the court found that "[t]he factual assertions relied on by petitioner in the instant petition were available to him when he filed his initial petition. Petitioner fails to identify any objective factor which impeded his efforts to raise these claims in his previous petition." The court added that defendant did not "identify any objective factor which impeded his efforts to raise these claims in his previous petition." It is from this finding that defendant now appeals.

¶ 9                                    ANALYSIS

¶ 10        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2006)) allows
a criminal defendant a procedure for determining whether he was convicted in substantial
violation of his constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). To
be entitled to relief under the Act, a defendant must establish a substantial violation of his
constitutional rights in the proceedings that produced the conviction or sentence being
challenged. *People v. Jones*, 211 Ill. 2d 140, 143-44 (2004).

¶ 11        The Act contemplates the filing of only one postconviction petition. *People v. Evans*, 186
Ill. 2d 83, 89 (1999); 725 ILCS 5/122–1(f) (West 2006). Successive postconviction petitions
are governed by section 122–1(f) of the Act, which provides:

> "Only one petition may be filed by a petitioner under this Article without leave of the
> court. Leave of court may be granted only if a petitioner demonstrates cause for his
> or her failure to bring the claim in his or her initial post-conviction proceedings and
> prejudice results from that failure." 725 ILCS 5/122–1(f) (West 2006).

¶ 12        Leave to file successive postconviction petitions may be granted when a defendant has
established cause and prejudice, or when fundamental fairness so requires. *People v.
Pitsonbarger*, 205 Ill. 2d 444, 459 (2002); *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010); 725
ILCS 5/122–1(f) (West 2006). Pursuant to the cause-and-prejudice test, the petitioner must
show good cause for failing to raise the claimed errors in a prior proceeding and actual
prejudice resulting from the claimed errors. *Pitsonbarger*, 205 Ill. 2d at 460; 725 ILCS
5/122–1(f) (West 2006). "Cause" is defined as "any objective factor, external to the defense,
which impeded the petitioner's ability to raise a specific claim at the initial postconviction
proceeding." *Pitsonbarger*, 205 Ill. 2d at 462; 725 ILCS 5/122–1(f) (West 2006). "Prejudice"
is defined as an error so infectious to the proceedings that the resulting conviction violates
due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122–1(f) (West 2006). A defendant
must establish cause and prejudice as to each individual claim asserted in a successive
postconviction petition to escape dismissal under *res judicata* and waiver. *Pitsonbarger*, 205
Ill. 2d at 463; 725 ILCS 5/122–1(f) (West 2006). A trial court may determine whether a
defendant has established cause and prejudice by reviewing the "contents of the petition
submitted." *Tidwell*, 236 Ill. 2d at 162. We review the trial court's denial of a motion to file
a successive postconviction petition *de novo*. *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007).

¶ 13        Defendant first claims that the trial court erred in denying his motion for leave to file a
successive postconviction petition where he established cause and prejudice in arguing that
he was unaware of possible deportation consequences and his attorney was ineffective for
failing to inform him of such consequences. Defendant further states that had counsel
informed him of the possibility of deportation, he would have proceeded to trial given that
the evidence against him was not overwhelming.

¶ 14        As "cause" for his failure to raise this claim in an earlier proceeding, defendant argues
that he was unaware at the time of his guilty plea that he could possibly face deportation
proceedings. Defendant contends neither defense counsel nor the trial court informed him
that by pleading guilty he could possibly face deportation. Although defendant does not
provide the date on which he became aware that he could possibly face deportation as a result

of pleading guilty to first degree murder, taking defendant's representations as true, we find that defendant has established cause for failing to raise this issue in a previous postconviction petition, especially where defendant's first petition was *pro se* and denied at the first stage.

¶ 15    Defendant claims that he has established prejudice by demonstrating that his counsel was ineffective for failing to notify him of the deportation consequences stemming from his guilty plea. Defendant claims that had he been aware of those consequences, he would have insisted on going to trial because the evidence against him was not overwhelming.

¶ 16    Although it had not been decided at the time defendant filed his application for leave to file a successive postconviction petition, and had not been decided when the court issued its order denying defendant leave to file, defendant contends that the holding in *Padilla v. Kentucky*, 559 U.S. ___, 130 S. Ct. 1473 (2010), supports his argument that counsel was ineffective and establishes actual prejudice in his case.

¶ 17    Before we discuss *Padilla* and its application here however, we must discuss defendant's right to counsel under the sixth amendment and counsel's obligations under *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 18    The law is clear that a defendant in any criminal case is constitutionally guaranteed effective assistance of counsel under the sixth amendment to the United States Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland*, 466 U.S. 668 (adopted by *People v. Albanese*, 104 Ill. 2d 504 (1984)). A determination as to whether counsel's assistance is effective is governed by Strickland and is subject to *de novo* review. *Strickland*, 466 U.S. at 698.

¶ 19    The *Strickland* Court set forth the two requirements that a defendant must show to prevail on an ineffective assistance claim: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced him. The burden is on the defendant to overcome the strong presumption that defense counsel rendered adequate assistance using reasonable professional judgment pursuant to sound trial strategy. *Strickland*, 466 U.S. at 689-90.

¶ 20    For a defendant to satisfy the prejudice requirement in the plea bargaining context, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *People v. Pugh*, 157 Ill. 2d 1, 15 (1993) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The record should demonstrate a 'reasonable probability' that but for the error, the defendant would have rejected the plea agreement." *Pugh*, 157 Ill. 2d at 15. Whether the alleged error was prejudicial, depends largely on whether the defendant would have likely succeeded at trial. *Pugh*, 157 Ill. 2d at 15.

¶ 21    Defendant acknowledges that the controlling law at the time of his plea, and also at the time he made application for leave to file his successive postconviction petition at issue here, was that counsel was not ineffective for failing to advise his client regarding potential immigration consequences of a guilty plea, so long as the attorney did not affirmatively misadvise the client. *People v. Huante*, 143 Ill. 2d 61, 68-74 (1991). Citing *People v. Bouzidi*, 332 Ill. App. 3d 87 (2002), the circuit court relied on this principle as a basis for finding that defendant did not suffer prejudice under the cause-and-prejudice test. Defendant

now contends that the circuit court's reliance on *Bouzidi* as a basis for concluding he failed to establish prejudice is flawed, given the United States Supreme Court's recent decision in *Padilla v. Kentucky*, 559 U.S. ___, 130 S. Ct. 1473 (2010).

¶ 22     In *Padilla*, the defendant, a legal permanent resident of the United States for 40 years, pled guilty to distributing drugs and faced deportation proceedings. The defendant filed a postconviction petition alleging that trial counsel failed to advise him that he could be deported as a result of his plea and actually told him not to worry about deportation because he had lived in the country so long. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1478. Finding that defendant was not denied effective assistance of counsel, even if counsel's deportation advice was erroneous, because deportation is a mere collateral consequence of a conviction, the Kentucky Supreme Court denied defendant postconviction relief. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1478.

¶ 23     The Supreme Court reversed, holding that defendant's counsel had an obligation under the sixth amendment to advise defendant that the offense to which he was pleading guilty would subject him to automatic deportation. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1480-81. The Court noted that the Kentucky Supreme Court, as well as numerous other courts, have found that the failure of defense counsel to advise a defendant of possible deportation consequences was not cognizable as a claim of ineffective assistance of counsel because deportation has been viewed as a collateral, not a direct, consequence of a criminal conviction. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1480-81. The Court went on to explain that it had never applied a distinction between direct and collateral consequences to define the scope of constitutionally " 'reasonable professional assistance' " required under *Strickland*. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1481 (quoting *Strickland*, 466 U.S. at 689). Given the close connection between a criminal conviction and deportation, the *Padilla* Court concluded that deportation is "uniquely difficult to classify as either a direct or a collateral consequence" and therefore the "collateral versus direct distinction" is "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1481-82. The Court did find however, that "*Strickland* applies to Padilla's claim." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1482.

¶ 24     Applying *Strickland*, the *Padilla* Court first set out to determine whether counsel's representation fell below an objective standard of reasonableness. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1482. "The first prong–constitutional deficiency–is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' " *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1482 (quoting *Strickland*, 466 U.S. at 688). Prevailing professional norms support the view that counsel must advise a client of possible deportation consequences. Because the immigration consequences for Padilla were clearly defined by federal law, Padilla's counsel could have easily determined that his plea would make him eligible for deportation. Instead, Padilla's counsel provided him incorrect advice that his plea would not result in removal form this country. *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483. The *Padill*a Court went on to hold that counsel's performance was deficient under the first prong of *Strickland*. In doing so, the court noted other situations where the possible immigration consequences would not be so clearly defined and determined that "[w]hen the

law is not succinct and straightforward," defense counsel is only required to inform "a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483.

¶ 25    The State contends that *Padilla* is inapplicable to the facts of the instant case because *Padilla* cannot be applied retroactively, where the Court established a new rule of criminal procedure that does not fall within either of the *Teague* exceptions.

¶ 26    *Teague v. Lane*, 489 U.S. 288 (1989), governs the retroactive application of criminal laws. The determination as to whether retroactive application is warranted turns on whether a case announces a new rule or merely expands upon a preexisting rule. *Teague*, 489 U.S. at 299. Generally speaking, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (Emphasis omitted.) *Teague*, 489 U.S. at 301. A decision that applies an established general rule to a new set of facts is not a new rule. *Teague*, 489 U.S. at 309. In other words, where a decision "breaks new ground or imposes a new obligation on the States or the Federal Government," or "if the result [is] not dictated by precedent existing at the time the defendant's conviction became final," a decision announces a new rule. (Emphasis omitted.) *Teague*, 489 U.S. at 301.

¶ 27    The *Teague* Court articulated two instances when new rules of criminal procedure should be applied retroactively to cases on collateral review: (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making power to proscribe; or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 311.

¶ 28    The first *Teague* exception was fashioned by the court in *Mackey v. United States*, 401 U.S. 667 (1971), and applies only to rules that decriminalize a class of conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense. *Saffle v. Parks*, 494 U.S. 484, 495 (1990). This exception is inapplicable to the facts of the instant case.

¶ 29    The Supreme Court has limited the scope of the second exception to "watershed rules of criminal procedure" that " 'will properly alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction' " and "without which the likelihood of an accurate conviction is seriously diminished." (Emphasis omitted.) *Teague*, 489 U.S. at 313 (quoting *Mackey*, 401 U.S. at 693). The Supreme Court has only once recognized a watershed rule of criminal procedure, in *Gideon v. Wainwright*, 372 U.S. 335 (1963), when the Court held that a defendant has a constitutional right to be represented by counsel at all criminal trials in which a defendant is charged with a serious offense.

¶ 30    The *Teague* analysis was adopted by the Illinois Supreme Court in *People v. Flowers*, 138 Ill. 2d 218, 238 (1990), and was applied to an action brought pursuant to the Act. In *Flowers*, the defendant was convicted of murder, armed robbery and armed violence. His conviction was affirmed on appeal. Thereafter, the defendant filed a postconviction petition that was denied without an evidentiary hearing. On appeal from the denial of his petition, defendant alleged that conflicting jury instructions, which required a jury to find him guilty of both murder and voluntary manslaughter, if it found him guilty of voluntary manslaughter, violated his right to due process. Defendant relied on our supreme court's holding in *People*

*v. Reddick*, 123 Ill. 2d 184 (1988), in support of his argument.

¶ 31    In *Reddick*, the court had held that conflicting jury instructions which failed to state the appropriate burdens of proof were unconstitutional as the jury could not possibly convict the defendant of the lesser-included offense. *Reddick*, 123 Ill. 2d at 197. The jury instructions misallocated the appropriate burdens of proof by placing the responsibility of proving the mitigating circumstances that would reduce murder to manslaughter on the State. The appropriate jury instruction would have informed the jury that it was the State's burden to disprove the mitigating circumstances. *Reddick*, 123 Ill. 2d at 197. Although the *Flowers* court recognized that *Reddick* announced a rule of constitutional dimension as it changed the law regarding the burden of proof and elements of he offense of voluntary manslaughter, it declined to apply the *Reddick* ruling retroactively under the second exception announced in *Teague*, as the *Reddick* decision did not constitute a watershed rule of criminal procedure. *Flowers*, 138 Ill. 2d at 239. Specifically, the *Flowers* court stated, "[t]his exception must be narrowly construed and we do not believe that the *Reddick* rule established such a component of basic due process so as to fall within it." *Flowers*, 138 Ill. 2d at 242.

¶ 32    Defendant urges that *Padilla* did not announce a new rule of criminal procedure but merely applied the *Strickland* to a new factual scenario. The State argues that *Padilla* announced a new rule of criminal procedure, but it does not fall within either of the two *Teague* exceptions, and therefore is not retroactive.

¶ 33    Whether *Padilla* warrants retroactive application here, depends on whether *Padilla* announced a "new rule" or merely expands on a preexisting rule. *Teague*, 489 U.S. at 299. This is an issue of first impression in Illinois. If *Padilla* announced a new rule, it is retroactive to cases on collateral review only if it falls within one of the two exceptions articulated in *Teague*. *Teague*, 489 U.S. at 299-300. If *Padilla* did not announce a new rule of criminal procedure, it is applicable to cases that were final before *Padilla* was decided. *People v. Moore*, 177 Ill. 2d 421, 436 (1997). Based on our review of the facts of this case as well as *Teague* and other relevant case law, we are confident that only one result is possible here: the *Padilla* Court *did not* announce a new rule of criminal procedure.

¶ 34    Generally speaking, it is "often difficult" to determine whether a case announces a new rule. *Teague*, 489 U.S. at 301. This determination is particularly troublesome where the new decision is reached by an extension of the reasoning of prior cases. *Butler v. McKellar*, 494 U.S. 407, 412-13 (1990). However, the task is to determine whether, at the time the defendant's conviction became final, whether court's considering defendant's claim, "would have felt compelled by existing precedent to conclude that the rule *** was required by the Constitution." *Saffle*, 494 U.S. at 488; *People v. Morris*, 236 Ill. 2d 345, 360 (2010). Nevertheless, this kind of analysis is unnecessary here.

¶ 35    Although not recognized in Illinois until recently, *Teague* not only provided instruction on the application of new rules on collateral review, but it also provided instruction on the *announcement* of new rules in cases on collateral review. See *Morris*, 236 Ill. 2d 345 (the portion of the *Teague* opinion discussing the announcement of new rules in cases on collateral review has not been applied or discussed in Illinois state courts). In *Teague*, the Supreme Court stated:

"Were we to recognize the new rule urged by petitioner in this case, we would have to give petitioner the benefit of that new rule even though it would not be applied retroactively to other similarly situated. In the words of JUSTICE BRENNAN, such an inequitable result would be 'an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dicutm.' [Citation.] ***

If there were no other way to avoid rendering advisory opinions, we might well agree that the inequitable treatment described above is 'an insignificant cost for adherence to sound principles of decision-making.' [Citation.] But there is a more principled way of dealing with the problem. We can simply refuse to announce a new rule in a given case unless the rule would be applied retroactively to the defendant in the case and to all others similarly situated. [Citation.] We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." (Emphasis omitted.) *Teague*, 489 U.S. at 315-16.

¶ 36    Prior to *Teague*, the Supreme Court would regularly announce new rules but not address the retroactivity of those rules until subsequent cases. *Teague*, 489 U.S. at 302-03. In cases following *Teague*, the Court has stated, "[u]nder *Teague*, new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions." *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989); *Butler*, 494 U.S. at 412. Accordingly, *Teague* mandates that the issue of retroactivity should be decided as a threshold question before addressing a constitutional claim. *Teague*, 489 U.S. at 305.

¶ 37    The *Padilla* Court decided that the defendant was entitled to a hearing on his postconviction claim of ineffective assistance of counsel without any mention of retroactivity or *Teague*, either as a threshold matter or a mere consideration. The absence of this analysis alone, given *Teague*'s specific prohibition against announcing a new rule of criminal procedure in cases on collateral review unless that rule would apply to that defendant, and retroactively to other defendants similarly situated under one of the two exceptions, leads us to conclude that the *Padilla* Court did not intend to establish a new rule of criminal procedure.

¶ 38    Furthermore, the *Padilla* Court explicitly stated it was "evaluating a *Strickland* claim concerning the specific risk of deportation" and that "*Strickland* applies to Padilla's claim." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1482. The Court's threshold consideration was whether *Strickland* could apply to issues of deportation. After finding defense counsel's obligations to a defendant regarding deportation to fall within the sixth amendment right to counsel, the *Padilla* Court simply expanded *Strickland* to include counsel's obligation to inform a defendant of possible deportation consequences. A decision that applies an established general rule (*Strickland*) to a new set of facts (deportation) is not a new rule. *Teague*, 489 U.S. at 309, 311.

¶ 39    Additional support for our conclusion comes from the Court's acknowledgment, again without discussing *Teague*, that its holding would potentially undermine the finality of

convictions obtained through guilty pleas and its subsequent citation to *Hill v. Lockhart*, 474 U.S. 52 (1985). In rejecting requests to limit its holding to affirmative misadvise, the *Padilla* Court stated, "[w]e confronted a similar 'floodgates' concern in *Hill* [citations], but nevertheless applied *Strickland* to a claim that counsel had failed to advise the client regarding his parole eligibility before he pleaded guilty." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1484-85.

¶ 40    In *Hill*, the defendant filed a petition for *habeas corpus* based on ineffective assistance of counsel because counsel failed to advise him, that as a second offender, he was required to serve one-half of his sentence before becoming eligible for parole, which was denied. The United States Supreme Court granted *certiori* and held for the first time that the two-part *Strickland* test applied to challenges to guilty pleas based on claims of ineffective assistance of counsel. Applying *Strickland*, the *Hill* court found it unnecessary to reach the question of whether counsel's performance was ineffective where the defendant failed to establish prejudice under the second prong of *Strickland*. *Hill*, 474 U.S. at 60.

¶ 41    The *Padilla* Court recognized that *Hill* expanded the holding in *Strickland* to encompass the defendant's ineffective assistance of counsel claims pertaining to guilty pleas in the context of a *habeas corpus* proceeding. *Hill* did so without mentioning *Teague* or determining retroactivity. Similar to the *Hill* Court, the *Padilla* court also expanded the holding of *Strickland* without discussing *Teague* and recognized that its holding may allow new challenges to prior guilty pleas. However, the *Padilla* Court but sought to dispel those concerns.

> "It seems unlikely that our decision today will have significant effect on those convictions already obtained as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of client's plea." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1486.

¶ 42    An argument can certainly be made that *Padilla* represents a new rule of criminal procedure based on the *Padilla* Court's recognition of the novelty of its holding. "[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1488. The Court also noted, "[T]his Court has never held that a criminal defense attorney's Sixth Amendment duties extend to providing advice about [collateral consequences of a conviction]." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1488 (Alito, J., concurring, joined by Roberts, C.J.). An argument can also be made that *Padilla* represents a new rule of criminal procedure based on its implication alone. Recently, in *People v. Kabre*, 905 N.Y.S.2d 887, 892-94 (N.Y. Crim. Ct. 2010), the court, in determining that *Padilla* would not apply retroactively, observed that the *Padilla* decision effectively changed the law in nine circuits and the majority of states. However, given the procedural posture of this case, as well as *Teague*'s mandate, we cannot find any support for a finding that *Padilla* established a new rule. Consequently, *Padilla* may be retroactively applied to the case at bar.

¶ 43    While *Padilla* operates to establish that counsel's performance was unreasonable in this case, it does not operate to establish that defendant suffered prejudice with respect to the

second prong of *Strickland*. *Padilla* did not reach the determination of whether the defendant was prejudiced by counsel's performance, and therefore entitled to relief, because it was not before the Court. "Whether Padilla is entitled to relief on his claim will depend on whether he can satisfy *Strickland*'s second prong, prejudice, a matter we leave to the Kentucky courts to consider in the first instance." *Padilla*, 559 U.S. at ___, 130 S. Ct. at 1483-84.

¶ 44    As previously discussed, in order to establish prejudice under the second prong of *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Pugh*, 157 Ill. 2d at 15. Whether the alleged error was prejudicial depends largely on whether it was likely that the defendant would have succeeded at trial. *Pugh*, 157 Ill. 2d at 15.

¶ 45    Defendant has not shown that he would have succeeded at trial and therefore cannot establish prejudice under the second prong of *Strickland* in this case. The evidence against defendant is overwhelming. The eyewitness, Mr. Phillips, saw defendant exit a car parked near 6050 South Sawyer on the night of November 2, 2003. Mr. Phillips heard gunshots and saw defendant return to the car with a gun in his hand. Defendant admitted in a videotaped statement that he and codefendant Rosendo Ruiz agreed to perform a robbery that evening and that Isidro Rodriguez was the intended victim. In his statement, defendant stated that he was the lookout and that it was Ruiz who actually shot the victim. In addition, a gun recovered in an unrelated case involving defendant as the offender contained defendant's palm print and DNA. The gun was tested and found to be the murder weapon in this case.

¶ 46    As defendant cannot establish prejudice under the second prong of *Strickland*, he cannot demonstrate prejudice under the cause-and-prejudice test. Therefore, we find that the trial court properly denied his request for leave to file a successive postconviction petition with respect to the first issue raised.

¶ 47    Defendant also agues that the trial court erred when it failed to inform him of the possible deportation consequences of his guilty plea. Defendant claims that the trial court had a statutory obligation to inform him that he could possibly be deported as a result of his plea.

¶ 48    The statutory obligation that defendant speaks of is found in section 113–8 of the Code of Criminal Procedure of 1963:

> "Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:
>
> 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113–8 (West 2006).

¶ 49    Because defendant raised this claim in a successive postconviction petition, he must establish cause and prejudice before he can be granted leave to file his successive petition. *Pitsonbarger*, 205 Ill. 2d at 459. That is, defendant must show good cause for failing to raise the claimed errors in a prior proceeding and actual prejudice resulting from the claimed errors. *Pitsonbarger*, 205 Ill. 2d at 460; 725 ILCS 5/122–1(f) (West 2006). A defendant must

establish cause and prejudice as to each individual claim asserted in a successive postconviction petition to escape dismissal under *res judicata* and waiver. *Pitsonbarger*, 205 Ill. 2d at 463; 725 ILCS 5/122–1(f) (West 2006).

¶ 50 "Cause" is defined as "any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim at the initial postconviction proceeding." *Pitsonbarger*, 205 Ill. 2d at 462; 725 ILCS 5/122–1(f) (West 2006). With respect to cause, defendant again claims that he was unaware of any deportation consequences of his plea until after he filed his first postconviction petition. Although section 113–8 was in effect at the time of defendant's plea, a review of the record establishes that the trial court did not admonish defendant regarding the potential immigration consequences of his plea, as required by section 113–8. The trial court's failure to inform defendant, in conjunction with his claim that defense counsel did not discuss possible immigration consequences with him, lends credence to claim that he was unaware of the deportation consequences at the time he filed his initial postconviction petition. This is especially true that given that defendant's initial *pro se* petition was denied at the first stage and counsel on appeal withdrew.

¶ 51 However, whether defendant has established cause is irrelevant where he cannot establish the prejudice prong of the cause-and-prejudice test. To establish prejudice, defendant must show that the claim not raised in his initial postconviction petition so infected the trial that the resulting conviction violated due process. *Pitsonbarger*, 205 Ill. 2d at 464; 725 ILCS 5/122–1(f) (West 2006).

¶ 52 Defendant maintains that his due process rights were violated where, based on the trial court's failure to admonish him in accordance with section 113–8, his plea was not knowingly entered. The State maintains that the trial court adhered to the regulations of Illinois Supreme Court Rule 402, which requires "[t]he court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats of any promises, apart from the plea agreement, were used to obtain the plea." Furthermore, the State argues, our supreme court in *People v. Delvillar*, 235 Ill. 2d 507, 522 (2009), held that "the failure to admonish a defendant of potential immigration consequences does not rise to a constitutional violation." Therefore, the trial court's failure to admonish defendant regarding possible immigration consequences is not a constitutional violation and is consequently not cognizable under the Act. See *People v. Brown*, 169 Ill. 2d 94, 101 (1995) (the Act provides a remedy to criminal defendant who allege substantial violations of their constitutional rights occurred at trial).

¶ 53 Defendant recognizes the holding in *Delvillar*, but argues it was effectively overruled by *Padilla*. In *Delvillar*, the defendant who plead guilty to unlawful use of a weapon by a felon, later sought to withdraw his guilty plea, asserting that he did not knowingly or voluntarily waive his right to trial or comprehend the admonishments of the court. Specifically, the defendant sought to withdraw his guilty plea on the grounds that the circuit court failed to admonish him of the potential immigration consequences of his plea pursuant to section 113–8 (725 ILCS 5/113–8 (West 2006)), despite the fact that the defendant represented to the court that he was a United States citizen. The circuit court denied his motion. The appellate court reversed and remanded for further proceedings. *Delvillar*, 235 Ill. 2d at 510-

11.

¶ 54    Our supreme court reversed the decision of the appellate court. In doing so, the court found that the admonishment to inform defendants of possible immigration consequences under section 113–8 is mandatory, under the mandatory or permissive dichotomy, in the sense that the circuit court does not have the discretion in giving the admonishment, regardless of whether a defendant has indicated that he or she acknowledges a lack of citizenship. *Delvillar*, 235 Ill. 2d at 516. The court found however, that the dispositive issue was whether section 113–8 was mandatory or directory. *Delvillar*, 235 Ill. 2d at 516.

¶ 55    In answering this question, the court presumed that the language issuing a procedural command to a government official indicates an intent that the statute is directory, but it recognized two conditions in which this presumption is overcome. *Delvillar*, 235 Ill. 2d at 517 (citing *People v. Robinson*, 217 Ill. 2d 43, 58 (2005)). First, when there is negative language prohibiting further action in the case of noncompliance; and second, when the protected right generally would be injured under a directory reading. *Delvillar*, 235 Ill. 2d at 517 (citing *Robinson*, 217 Ill. 2d at 58). The court found that neither condition applied so that the admonishment was directory and failing to issue the admonishment would not automatically require the court to grant a motion to withdraw a guilty plea. *Delvillar*, 235 Ill. 2d at 517-19. The failure to give the admonishment would be one factor to be considered by the court in ruling on a motion to withdraw a guilty plea. *Delvillar*, 235 Ill. 2d at 519.

¶ 56    The focus of a reviewing court in determining whether a trial court has abused its discretion in denying a motion to withdraw a guilty plea should be whether the guilty plea was "affirmatively shown to have been made voluntarily and intelligently." *Delvillar*, 235 Ill. 2d at 520. With respect to voluntariness, the court must inform a defendant of the direct consequences of his plea prior to accepting a guilty plea. *Delvillar*, 235 Ill. 2d at 520. Direct consequences of a plea are those that affect the defendant's sentence and other punishment that the circuit court may impose. *Delvillar*, 235 Ill. 2d at 520 (citing *People v. Williams*, 188 Ill. 2d 365, 372 (1999)). Conversely, collateral consequences are "effects upon the defendant that the circuit court has no authority to impose." *Delvillar*, 235 Ill. 2d at 520 (citing *Williams*, 188 Ill. 2d at 372). Immigration consequences are collateral consequences and due process does not require that a defendant be informed of the collateral consequences of his plea. *Delvillar*, 235 Ill. 2d at 521. Consequently, the court found that failure to admonish a defendant of potential immigration consequences pursuant to section 113–8 does not affect the voluntariness of the plea.

> "In this case, because such consequences remain collateral, the failure to admonish defendant of such consequences does not call into question the constitutional voluntariness of his guilty plea.
>
> *** [T]he failure to admonish a defendant of potential immigration consequences does not rise to a constitutional violation ***." *Delvillar*, 235 Ill. 2d at 522.

¶ 57    Contrary to defendant's argument, *Padilla* has no effect on our supreme court's holding in *Delvillar*. The *Padilla* Court noticed recent changes in immigration law that make it "most difficult" to divorce the penalty from the conviction in the deportation context and discussed the "unique[ ] difficult[ies]" of characterizing immigration consequences as direct or

collateral. However, the Court noted that it had never applied a distinction between direct and collateral consequences in determining what constitutes reasonable assistance under *Strickland* and declined to do so in this case. *Padilla*, 559 U.S. at \_\_\_, 130 S. Ct. at 1476. The Court found the distinction between direct and collateral consequences "ill-suited to evaluating a *Strickland* claim concerning the specific risks of deportation." *Padilla*, 559 U.S. at \_\_\_, 130 S. Ct. at 1476. The Court ultimately found that the decision as to whether counsel is constitutionally effective turns on whether counsel's performance was " 'reasonable under prevailing professional norms.' " *Padilla*, 559 U.S. at \_\_\_, 130 S. Ct. at 1482 (quoting *Strickland*, 466 U.S. at 688).

¶ 58 *Padilla*'s holding is clear and concise. Failure to inform a defendant of the potential immigration consequences of his plea amounts to a deficient performance by counsel under the first prong of *Strickland*. We do not read *Padilla* as rejecting the distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered. The Court specifically rejected the use of a direct/collateral consequence analysis. There simply is no evidence to suggest that the *Padilla* Court intended to reclassify deportation as a direct consequence of a guilty plea. Accordingly, we find *Delvillar* remains dispositive of defendant's claim.

¶ 59 Under *Delvillar*, the claim raised by defendant does not involve a constitutional right and is therefore not cognizable in a postconviction proceeding. Consequently, defendant cannot establish prejudice under the cause-and-prejudice test and the trial court properly denied defendant leave to file his successive postconviction petition.

¶ 60 Finally, defendant claims this court should vacate the $50 State's Attorney fee assessed following the circuit court's summary dismissal of his first postconviction petition because the State's Attorney was not involved in the disposition of the petition as it was dismissed at the first stage of postconviction proceedings. The State argues against vacating the fee on the grounds that this court lacks jurisdiction to consider defendant's claim because defendant's appeal from his initial postconviction petition was dismissed on January 9, 2008.

¶ 61 Defendant was assessed the $50 fee pursuant to section 4–2002.1(a) of the Counties Code, which is entitled "State's attorney fees in counties of 3,000,000 or more population," and provides:

> "(a) State's attorneys shall be entitled to the following fees:
>
> * * *
>
> For each day actually employed in the hearing of a case of habeas corpus in which the people are interested, $50." 55 ILCS 5/4–2002.1(a) (West 2006).

¶ 62 Before determining whether the $50 fee was improperly imposed, we must address the State's argument that defendant cannot raise this issue on appeal from the denial of leave to file a separate successive postconviction petition.

¶ 63 A sentence that does not conform to a statutory requirement is void. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). It is well established that a "void [judgment] may be attacked at any time *** either directly or collaterally." *People v. Thompson*, 209 Ill. 2d 19, 27 (2004). An argument that a judgment is void is not subject to waiver. *Thompson*, 209 Ill. 2d at 27. However, the issue of voidness must be raised in the context of a proceeding that is properly

-15-

pending in the courts. *People v. Flowers*, 208 Ill. 2d 291, 308 (2003). "If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void." *Flowers*, 208 Ill. 2d at 308.

¶ 64      As we have proper jurisdiction over defendant's appeal from the denial of leave to file his successive postconviction petition, we may consider defendant's claim that the order imposing the $50 fee is void.

¶ 65      There is no dispute here that defendant's initial postconviction petition was dismissed at the first stage. At the first stage, the trial court may dismiss, *without any input from the State*, the defendant's postconviction petition as frivolous or patently without merit. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). Hence, because the State was not "employed" in the hearing of the case, the $50 fee was improperly imposed. Accordingly, we vacate the $50 fee.

¶ 66      Based on the foregoing, we affirm the judgment of the circuit court denying defendant leave to file a successive postconviction petition, but vacate the $50 State's Attorney fee imposed.

¶ 67      Affirmed in part and vacated in part.