# Illinois Official Reports

## Appellate Court

---

**People v. Greco, 2014 IL App (1st) 112582**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANCHINO GRECO, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-11-2582 |
| Filed | May 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition was upheld over his contentions that he made a substantial showing that his counsel was ineffective in failing to advise him that his guilty plea made him eligible for deportation, that the plea was not knowing and intelligent in the absence of an admonishment by the trial court of the immigration consequences, and that his sentence was less than the mandated minimum, since the new rule in *Padilla* that counsel must advise defendant of the possibility of deportation as a result of a guilty plea did not retroactively apply to defendant's case, the trial court, pursuant to *Delvillar*, was not required to admonish defendant of the immigration consequences of his guilty plea, and the new rule in *White* that a court does not have the authority to impose a sentence that does not conform to the statutory guidelines does not retroactively apply to defendant's case, and even if it did, defendant could not complain about an error that was to his benefit. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-CR-7223; the Hon. Domencia A. Stephenson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Brian E. Koch, all of State
Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg,
Amy M. Watroba, and Sheila O'Grady-Krajniak, Assistant State's
Attorneys, of counsel), for the People.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with
opinion.
Presiding Justice Connors and Justice Hoffman concurred in the
judgment and opinion.

## OPINION

¶ 1 On March 30, 2005, defendant Franchino Greco (Greco) pleaded guilty to criminal drug conspiracy (720 ILCS 570/405.1(a) (West 2004)) predicated on the delivery of 15 to 100 grams of cocaine. On April 19, 2005, the circuit court of Cook County sentenced Greco to seven years' imprisonment. On July 24, 2008, Greco filed a petition to withdraw his guilty plea and vacate the judgment against him pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2008)) and section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2008)). On August 27, 2008, the trial court summarily dismissed Greco's postconviction petition. On appeal, this court reversed the trial court's summary dismissal of Greco's petition, and remanded the petition for second-stage proceedings. *People v. Greco*, No. 1-08-2457 (Sept. 21, 2010) (unpublished order under Supreme Court Rule 23). On remand, the State filed a motion to dismiss Greco's postconviction petition. On August 18, 2011, the trial court granted the State's motion to dismiss Greco's postconviction petition. Greco now appeals the trial court's judgment which dismissed his postconviction petition at the second stage of proceedings.

¶ 2 On appeal, Greco argues that: (1) the trial court erred in dismissing his postconviction petition because he has made a substantial showing that defense counsel was ineffective for failing to advise him that his guilty plea to criminal drug conspiracy would make him eligible for deportation; (2) the trial court erred in dismissing his postconviction petition because he has made a substantial showing that his guilty plea was not knowing and intelligent due to the court's failure to admonish him that his guilty plea carried possible immigration consequences; and (3) his guilty plea is void and must be vacated because his sentence of seven years' imprisonment was less than the statutorily mandated minimum sentence of nine years' imprisonment. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                          BACKGROUND

¶ 4          In 2001, Greco, along with 11 other codefendants, was charged by indictment with one
count of criminal drug conspiracy. The criminal drug conspiracy count was predicated on
several offenses of delivery of a controlled substance, including: delivery of 1 to 15 grams of
cocaine; delivery of 15 to 100 grams of cocaine; and delivery of 100 to 400 grams of cocaine.
Greco was also separately charged with two counts of delivery of a controlled substance for
delivery of 1 to 15 grams of cocaine, and delivery of 100 to 400 grams of cocaine. On March
30, 2005 the circuit court of Cook County held a conference with the parties pursuant to
Illinois Supreme Court Rule 402 (eff. July 1, 1997). After the conference, defense counsel
indicated that Greco was pleading guilty to "an amended count 1" for criminal drug
conspiracy. The trial court admonished Greco that he was pleading guilty to criminal drug
conspiracy along with his co-conspirators predicated on delivery of a controlled substance of
15 to 100 grams. The trial court admonished Greco that his offense of criminal drug
conspiracy was punishable by 6 to 30 years' imprisonment and that if Greco pleaded guilty
the court would sentence him to 7 years' imprisonment. Greco stated that he understood the
plea deal, the nature of the offense with which he was being charged, the possible penalties
for that offense, and that he was forfeiting his right to trial.

¶ 5          The factual basis for Greco's guilty plea was the State's proffer regarding the admission
of co-conspirator statements, which was signed by Greco. The following facts were
established by the document containing the co-conspirator statements. Between February 7,
2000, and March 7, 2001, Greco conspired with 11 co-conspirators to distribute cocaine. The
co-conspirator statements described several drug transactions and deliveries that involved
Greco. Many of the transactions involved unspecified amounts of cocaine. However, in one
transaction, Greco approached the vehicle of one of his co-conspirators, Robert Horwitz
(Horwitz), with a green object in his jacket pocket. Greco entered Horwitz's vehicle and the
two men had a short conversation. Horwitz then placed a clear plastic bag on the dashboard
of the vehicle and he and Greco continued to converse. Greco then exited Horwitz's vehicle,
went back to his own vehicle, and both men drove away. Shortly thereafter, Horwitz was
stopped by the police, and the police discovered 7.6 grams of suspected cocaine in his
possession. In another transaction, one of Greco's co-conspirators, Adam Koltun (Koltun),
met Greco at a café. Koltun exited the café and approached Greco's vehicle while Greco
remained in the café. Koltun opened the passenger side of Greco's vehicle and removed a
brown paper bag from the passenger seat. Koltun then walked over to his own vehicle, put
the paper bag in the trunk, and then went back inside the café. Shortly thereafter, Koltun
exited the café, entered his vehicle and drove away. Koltun was stopped by the police and the
police recovered 123.5 grams of cocaine from the paper bag in Koltun's trunk.

¶ 6          On April 19, 2005, the trial court sentenced Greco to seven years' imprisonment for
criminal drug conspiracy pursuant to the guilty plea. The trial court merged Greco's two
remaining indictment counts for delivery of a controlled substance. Greco did not attempt to
withdraw or in any way challenge his guilty plea within the statutorily required time.

¶ 7          On July 24, 2008, Greco filed a hybrid postconviction petition pursuant to section 122-1
of the Act and petition for relief from judgment pursuant to section 2-1401 of the Code.
Greco acknowledged that the three-year limitation to file his postconviction petition under
section 122-1 of the Act had expired on April 19, 2008, and that his petition was filed after
the deadline. However, he argued that his late filing was not due to his culpable negligence.

Greco was sentenced on April 19, 2005 and was released from the Illinois Department of Corrections (IDOC) on April 17, 2008. Greco alleged that one week before he was released from the IDOC on April 17, 2008, he was informed that the Department of Homeland Security was going to place him in its custody upon his release. He stated that immediately upon learning about his citizenship issues, he informed his family and asked them to find an attorney to assist him.

¶ 8        In his petition, Greco argued that defense counsel was ineffective for failing to advise him of the potential immigration consequences of his guilty plea. Greco stated that if he had known that his guilty plea would result in deportation, he would not have pleaded guilty. In support of his argument, Greco attached to his petition an affidavit executed by defense counsel which stated that counsel did not advise Greco of the potential immigration consequences of his guilty plea and an affidavit executed by Greco which stated that he would not have pleaded guilty if he had known of the immigration consequences of his guilty plea. Greco also argued that the trial court violated section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2004)), because when the court accepted his plea, the court failed to admonish him of the immigration consequences; and that the trial court violated the United States and Illinois Constitutions by failing to admonish him of the potential immigration consequences of his guilty plea.

¶ 9        Additionally, Greco stated that at the time his petition was filed he was 59 years old and had lived in the United States since 1962. He was a permanent resident of the United States but was deportable due to his criminal conviction. Greco had been married for over 30 years and had three children and four grandchildren. Upon his release, he intended to return to his home, where his wife and mother also resided. Further, Greco stated that he suffers from serious and life-threatening medical conditions, including cardiovascular disease and a cervical injury. He attached to his petition an affidavit from a doctor supporting his statements and detailing his medical condition.

¶ 10       On August 27, 2008, the trial court summarily dismissed Greco's postconviction petition at the first stage of proceedings. On appeal, this court reversed the trial court's judgment and remanded the matter for second-stage proceedings. On remand, on April 11, 2011, the State filed a motion to dismiss Greco's postconviction petition. On June 23, 2011, the trial court heard oral arguments on the State's motion to dismiss. On August 18, 2011, the trial court entered an order which dismissed Greco's petition at the second stage of proceedings. Initially, the trial court found that although Greco's petition was untimely, the untimeliness was not due to Greco's culpable negligence and thus the court considered the arguments in his petition. The trial court next found that Greco failed to establish that defense counsel was ineffective for failing to advise him of the immigration consequences of his guilty plea. The court reasoned that regardless of whether counsel's performance was unreasonable, Greco was not able to show that he was prejudiced by counsel's performance. The court stated that even though Greco claimed that he would not have pleaded guilty, Greco did not show that he would have insisted on going to trial or that he would have likely succeeded at trial. Also, the trial court rejected Greco's argument that the court's failure to admonish him of the immigration consequences of his guilty plea violated Greco's due process and equal protection rights. The court reasoned that Illinois courts have held that arguments such as Greco's do not amount to a constitutional violation because deportation is merely a collateral consequence and is not cognizable under the Act. Finally, the court found that Greco's

arguments were not proper for a section 2-1401 motion. Thus, the trial court dismissed Greco's petition at the second stage of proceedings.

¶ 11    Also on August 18, 2011, Greco filed a timely notice of appeal. Therefore, this court has jurisdiction to consider Greco's arguments on appeal pursuant to Illinois Supreme Court Rules 651 (eff. Feb. 6, 2013) and 606 (eff. Feb. 6, 2013).

¶ 12                                                    ANALYSIS

¶ 13    On appeal, we determine the following issues: (1) whether the trial court erred in dismissing Greco's postconviction petition because he has made a substantial showing that defense counsel was ineffective for failing to advise him that his guilty plea would make him eligible for deportation; (2) whether the trial court erred in dismissing Greco's postconviction petition because he has made a substantial showing that his guilty plea was not knowing and intelligent due to the court's failure to admonish him of possible immigration consequences; and (3) whether Greco's guilty plea is void and must be vacated because his sentence of seven years' imprisonment was less than the statutorily mandated minimum sentence of nine years' imprisonment.

¶ 14    We first determine whether the trial court erred in dismissing Greco's postconviction petition because he has made a substantial showing that defense counsel was ineffective for failing to advise him that his guilty plea would make him eligible for deportation.

¶ 15    Greco argues that he has made a substantial showing that defense counsel was ineffective for failing to advise him that his guilty plea would make him eligible for deportation based on the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). Greco points out that the *Padilla* court held that counsel is deficient if counsel does not inform his client that the client's guilty plea carries a risk of deportation. *Padilla*, 559 U.S. at 373-74. Greco argues that this case is directly analogous to *Padilla*. Thus, Greco contends that based on the Court's holding in *Padilla*, defense counsel in this case was deficient for failing to advise him of the possible immigration consequences of his guilty plea. Additionally, Greco argues that he was prejudiced by defense counsel's performance. Greco points out that at the time his petition was filed, he was a lawful permanent resident in the United States with very significant family ties within the United States. He also details his numerous medical conditions, including cardiovascular disease and a cervical injury. Greco alleges that he has no family, property, means of support, or known access to health care in his native country of Italy. Greco asserts that these facts corroborate his claim that if he had known that his guilty plea would result in deportation, he would not have pleaded guilty and would have insisted on going to trial.

¶ 16    Greco acknowledges that *Padilla* was decided long after his conviction became final. Thus, an issue arises of whether *Padilla* can be applied retroactively to Greco's case. Greco points out that the test for retroactivity used by Illinois courts was set forth in *Teague v. Lane*, 489 U.S. 288 (1989). In order to determine whether the rule in a later case applies retroactively to a prior case on collateral review, this court must determine whether the rule established in the later case is a new rule. If the rule is new, then it does not apply retroactively to prior cases on collateral review unless the prior case falls under certain narrow exceptions. *Teague*, 489 U.S. at 311-13. However, if the rule is *not* new, then it applies to prior cases on collateral review. *People v. Kizer*, 318 Ill. App. 3d 238, 246 (2000).

¶ 17    Greco further acknowledges that in *Chaidez v. United States*, 568 U.S. ___, ___, 133 S. Ct. 1103, 1107-08 (2013), the United States Supreme Court held that *Padilla* established a new rule of criminal procedure and, therefore, does not apply retroactively to cases in which the defendant's conviction was final before *Padilla* was decided. The Court in *Chaidez* analyzed the rule established in *Padilla* using the *Teague* test for retroactivity. However, Greco points out that in *Danforth v. Minnesota*, 552 U.S. 264, 281-82 (2008), the United States Supreme Court held that state courts are not bound by *Teague* when determining whether a rule applies retroactively in a state collateral proceeding. Therefore, Greco requests that this court decline to follow the Supreme Court in *Chaidez*. Rather, Greco urges this court to follow an Illinois Appellate Court case, *People v. Gutierrez*, 2011 IL App (1st) 093499, which was decided prior to *Chaidez*. In *Gutierrez*, this court held that *Padilla* did not announce a new rule and therefore could be applied retroactively. *Gutierrez*, 2011 IL App (1st) 093499, ¶ 42. Greco contends that *Gutierrez* correctly found that *Padilla* simply applied the common standard for ineffective assistance of counsel to a new set of facts involving immigration consequences, and thus did not establish a new rule or change the law at all. Accordingly, Greco requests that this court apply *Padilla* retroactively and find that defense counsel in this case was ineffective for failing to advise Greco that his guilty plea would make him eligible for deportation.

¶ 18    In response, the State argues that the trial court properly dismissed Greco's petition because Greco failed to make a substantial showing that defense counsel was ineffective. The State points out that in order to show that counsel was ineffective, Greco must show that counsel's performance was deficient *and* that he was prejudiced by counsel's performance. Primarily, the State argues that Greco failed to show that defense counsel was deficient because *Padilla* was decided after Greco's conviction was final and cannot be applied retroactively to this case. In support of its argument, the State relies on the *Chaidez* court's holding that *Padilla* established a new rule of law and cannot be applied retroactively. Thus, the State contends that Greco must be able to show that counsel was deficient based on the law at the time of his guilty plea. The State points out that prior to *Padilla*, Illinois courts generally held that failure to advise a client of potential collateral consequences of a conviction fell outside counsel's constitutional requirements. As such, the State asserts that Greco is unable to show that counsel was defective based on the law at the time his petition was filed.

¶ 19    Additionally, the State argues that even if this court finds that defense counsel's performance was deficient in this case, Greco has still failed to substantially show that he was prejudiced by counsel's performance. The State points out that Greco argued that to establish prejudice, he only had to show that, but for counsel's errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. However, the State argues that in order to establish prejudice, Greco must assert a claim of actual innocence or articulate a plausible defense that could have been raised at trial. The State argues that a bare allegation that Greco would have insisted on going to trial is not enough to establish prejudice. The State claims that Greco's petition lacks any claims of actual innocence or any plausible defenses that could have been raised at trial. Thus, the State argues that Greco failed to establish that he was prejudiced by defense counsel's performance. Accordingly, the State argues that Greco was unable to substantially show that defense counsel was ineffective.

¶ 20        The Act provides a method through which a defendant may challenge his conviction or sentence for violation of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). "To be entitled to postconviction relief, a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *Id.* In noncapital cases, postconviction proceedings under the Act consist of three stages. *Id.* at 471-72. At the first stage, the trial court must review the defendant's petition within 90 days and may dismiss the petition if it is frivolous or patently without merit. *Id.* at 472. At the second stage, if the defendant is indigent, counsel may be appointed for the defendant. *Id.* The State then has the option to answer the petition, or move to dismiss the petition. *People v. Turner*, 2012 IL App (2d) 100819, ¶ 19. "The trial court then determines whether the petition alleges a 'substantial showing of a constitutional violation.' " *Id.* (quoting *People v. Phyfiher*, 361 Ill. App. 3d 881, 883 (2005)). "If the allegations in the petition *** demonstrate a substantial violation of a constitutional right, the petition proceeds to the third stage, at which point the court conducts an evidentiary hearing." *Turner*, 2012 IL App (2d) 100819, ¶ 20. When a postconviction petition is dismissed at the second stage of proceedings without an evidentiary hearing, we review the trial court's dismissal under the *de novo* standard of review. *Id.* ¶ 21. In this case, the trial court dismissed Greco's petition at the second stage of proceedings without conducting an evidentiary hearing. Thus, we review the trial court's judgment using the *de novo* standard.

¶ 21        In order to establish ineffective assistance of counsel, the defendant must show that counsel's performance was deficient to the extent that it fell below an objective standard of reasonableness and that he suffered prejudice as a result of counsel's performance. *People v. Brock*, 2012 IL App (4th) 100945, ¶ 11 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The United States Supreme Court has held that this standard applies to ineffective assistance claims arising out of counsel's representation during the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

¶ 22        In this case, Greco relies on *Padilla* to support his argument that counsel was ineffective for failing to advise him of the possibility of deportation as a result of his guilty plea. In *Padilla*, the defendant was a native of Honduras and had been a lawful permanent resident of the United States for over 40 years. *Padilla*, 559 U.S. at 359. The defendant pleaded guilty to transporting a large amount of marijuana and subsequently faced deportation as a result of his conviction. *Id.* In a postconviction petition, the defendant claimed that defense counsel was ineffective because counsel failed to advise him of the deportation consequence prior to entering his guilty plea and also told him that he did not need to worry about his citizenship because he had been in the country for so long. *Id.* The defendant asserted that if he had not received erroneous advice from counsel, he would have insisted on going to trial. *Id.*

¶ 23        The Supreme Court noted that immigration law has evolved in that deportation is nearly inevitable for noncitizens who are convicted of crimes. *Id.* at 360. The Court stated that the consequence of deportation has made legal advice for noncitizens accused of crimes extremely important. *Id.* at 364. Further, the Court stated that deportation is an integral part, and sometimes the most important part, of the penalty imposed on noncitizen defendants who plead guilty to crimes. *Id.* The Court noted that historically, in state courts, a defendant's risk of deportation was considered a collateral matter because it was not within the sentencing authority of the state trial courts and many courts considered collateral consequences to be

outside the scope of a defendant's right to effective assistance of counsel under the sixth amendment. *Id*. at 364-65. Thus, many state courts historically held that because deportation was a collateral consequence, failure to advise a defendant of possible deportation consequences was not cognizable as a claim for ineffective assistance of counsel. *Id*. at 365.

¶ 24    However, the *Padilla* Court disagreed with the historical construction of deportation as a strictly collateral consequence. The Court stated that "[a]lthough removal proceedings are civil in nature, [citation], deportation is nevertheless intimately related to the criminal process." *Id*. The Court concluded that because deportation as a consequence of a conviction is so closely connected to the criminal process, it is uniquely difficult to classify as either a direct or collateral consequence. *Id*. at 366. Thus, the Court held that the risk of deportation is not to be evaluated using the collateral versus direct consequence distinction, and advice regarding deportation is not categorically removed from the ambit of the right to effective assistance of counsel. *Id*. Accordingly, the Court held that the defendant sufficiently alleged that counsel's performance was deficient for failing to correctly advise him of the possibility of deportation as a result of his guilty plea. *Id*. at 366-69.

¶ 25    We agree with Greco that *Padilla* is analogous to this case. However, the resolution of this issue depends on whether the rule established in *Padilla* can be applied retroactively to this case. Illinois courts use the standard set forth in *Teague* to determine whether the rule in a later case can be applied retroactively to a case in which the defendant's conviction was final before the later case was decided. See *People v. Davis*, 388 Ill. App. 3d 869, 879-80 (2009). As previously discussed, the court must determine if the rule established in the later case is a new rule. If the rule is new, then it does not apply retroactively to prior cases on collateral review unless the prior case falls under certain narrow exceptions. *Teague*, 489 U.S. at 311-13. If the rule is *not* new, then the rule is applied on collateral review. *Kizer*, 318 Ill. App. 3d at 246.

¶ 26    In *Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103 (2013), the United States Supreme Court addressed whether the *Padilla* Court established a new rule when it held that the sixth amendment requires defense counsel to advise the defendant of the risk of deportation arising from a guilty plea. The Court explained that pursuant to *Teague*, a case establishes a new rule when the rule breaks new ground or imposes a new obligation on the government. *Chaidez*, 568 U.S. at ___, 133 S. Ct. at 1107. In other words, a new rule is established when the result of the case is not dictated by precedent that existed when the defendant's conviction became final. *Id*. at ___, 133 S. Ct. at 1107. Conversely, a case does not establish a new rule when it merely applies a general standard to a new and different set of facts. *Id*. at ___, 133 S. Ct. at 1107. The Court noted that garden-variety applications of the *Strickland* standard for ineffective assistance do not produce new rules and that the *Strickland* standard provides guidance for resolving virtually all ineffective assistance claims. *Id*. at ___, 133 S. Ct. at 1107-08.

¶ 27    Recognizing these principles, the *Chaidez* Court found that *Padilla* did more than merely apply the general *Strickland* standard to a new factual situation. *Id*. at ___, 133 S. Ct. at 1108. The Court noted that prior to *Padilla*, the state and lower federal courts "almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences, including deportation." *Id*. at ___, 133 S. Ct. at 1109. The Court found that *Padilla* considered the threshold question of whether deportation advice was categorically removed from the scope of the sixth amendment because it was only a

collateral consequence of a conviction, rather than a component of a criminal sentence. *Id*. at ___, 133 S. Ct. at 1108. The *Chaidez* Court stated that before asking *how* the *Strickland* test applied, *Padilla* asked *whether* the *Strickland* test applied to cases involving deportation advice–a question that was previously unsettled. *Id*. at ___, 133 S. Ct. at 1108. The *Chaidez* Court concluded that *Padilla* announced a new rule in finding that the *Strickland* standard applied to cases involving deportation advice. *Id*. at ___, 133 S. Ct. at 1108. Accordingly, the *Chaidez* Court held that *Padilla* does not apply retroactively to cases where the defendant's conviction became final prior to *Padilla*. *Id*. at ___, 133 S. Ct. at 1113.

¶ 28     In this case, Greco urges this court to disregard the decision in *Chaidez*. Greco argues that although Illinois uses the *Teague* test to determine if cases can be applied retroactively, in *Danforth v. Minnesota*, 552 U.S. 264, 281-82 (2008), the United States Supreme Court held that state courts are not bound by *Teague* when determining whether a rule applies retroactively in a state collateral proceeding. Rather, Greco argues that this court should follow the reasoning in *People v. Gutierrez*, 2011 IL App (1st) 093499, which held that *Padilla* can be applied retroactively because it did not announce a new rule. Thus, relying on *Padilla*, Greco contends that defense counsel was ineffective.

¶ 29     We disagree with Greco's argument and we decline Greco's invitation to reject *Chaidez* and follow *Gutierrez*. Initially, we note that *Gutierrez* was decided prior to *Chaidez*. Further, we see no reason to deviate from the well-reasoned decision in *Chaidez*. As the Supreme Court in *Chaidez* recognized, *Padilla* refused to apply the typical distinction between collateral and direct consequences when deciding whether counsel is required to advise a defendant of the immigration implications of a guilty plea. In this narrow circumstance, the *Padilla* Court found the collateral versus direct consequences distinction unsuitable. The *Chaidez* Court concluded that *Padilla* resolved a previously unsettled question, thus *Padilla* announced a new rule. We agree with the reasoning of the *Chaidez* Court. Therefore, we hold that *Padilla* announced a new rule and cannot be retroactively applied to Greco's case. Accordingly, Greco is unable to make a substantial showing that defense counsel was ineffective, and the trial court did not err in dismissing his postconviction petition based on his ineffective assistance of counsel argument.

¶ 30     We next determine whether the trial court erred in dismissing Greco's postconviction petition because he has made a substantial showing that his guilty plea was not knowing and intelligent due to the court's failure to admonish him of possible immigration consequences.

¶ 31     Greco argues that the trial court erred by failing to admonish him of the possible immigration consequences of his guilty plea as required by section 113-8 of the Code of Criminal Procedure (Criminal Code) (725 ILCS 5/113-8 (West 2004)). Greco acknowledges that Illinois courts have held that trial courts are not constitutionally required to advise defendants of the possible immigration consequences resulting from guilty pleas because immigration consequences are collateral as opposed to direct consequences. See *People v. Delvillar*, 235 Ill. 2d 507, 520-21 (2009). However, Greco argues that those holdings have been effectively overruled by *Padilla* and are no longer good law because *Padilla* eliminated the distinction between direct and collateral consequences in relation to the immigration consequences of a guilty plea. Greco contends that although the holding in *Padilla* addressed only *trial counsel's* requirements regarding deportation advice, and did not address the *trial court's* required admonishments, the reasoning of *Padilla* should apply equally to the trial court's admonishments. Greco argues that given the reasoning of *Padilla*, the severity of

deportation, and the likelihood of deportation as a result of convictions such as his, it is no longer reasonable to hold that deportation is a collateral consequence that is not constitutionally required to be a part of the trial court's admonishments to a defendant.

¶ 32    In response, the State argues that Illinois courts have long held that trial courts are not constitutionally required to advise a defendant about potential immigration consequences. Additionally, the State argues that *Padilla* eliminated the distinction between direct and collateral consequences *only in relation to counsel's requirements* under the sixth amendment. The State asserts that the *Padilla* holding did not extend to the trial court's required admonishments of a defendant. Therefore, the State argues that the trial court did not err in dismissing Greco's postconviction petition based on his argument that his guilty plea was not knowing and intelligent.

¶ 33    We agree with the State's argument. Prior to *Padilla*, it was well established in Illinois that although the trial court is required to admonish the defendant of the immigration consequences of his guilty plea pursuant to section 113-8 of the Criminal Code, the statutory provision is directory, not mandatory because no particular consequence flows from noncompliance with the statute. *Delvillar*, 235 Ill. 2d at 514-15, 519. Thus, if the trial court fails to properly admonish the defendant under section 113-8 of the Criminal Code, the court is not *automatically required* to allow a motion to withdraw a guilty plea. *Id*. at 519. Further, immigration consequences are classified as collateral consequences, and "[d]ue process does not require that the defendant be informed of the collateral consequences of a guilty plea." *Id*. at 520-21. Thus, the failure to admonish the defendant of such consequences does not affect the constitutional voluntariness of the defendant's guilty plea. *Id*. at 521-22.

¶ 34    After *Padilla*, Illinois courts have continued to apply the principles employed in *Delvillar*.[1] In *People v. Guzman*, 2014 IL App (3d) 090464, ¶¶ 18-22, this court applied the reasoning in *Delvillar* and held that the trial court did not err in failing to admonish the defendant of the immigration consequences of his guilty plea pursuant to section 113-8 of the Criminal Code. Although this court did not discuss *Padilla* in relation to the trial court's admonishment requirements, the court was certainly aware of the implications of *Padilla* because the court reversed the judgment of the trial court based on defense counsel's failure to advise the defendant that he risked deportation by pleading guilty.[2] *Id*. ¶¶ 28-39.

---

[1]We note that in *Gutierrez*, this court specifically stated that the *Padilla* decision did not disturb our supreme court's holding in *Delvillar*. *Gutierrez*, 2011 IL App (1st) 093499, ¶ 57. However, *Gutierrez* reached the opposite conclusion to the Supreme Court in *Chaidez* as to whether *Padilla* can be applied retroactively. *Id*. ¶ 42. Additionally, our supreme court has disagreed with *Gutierrez* on other grounds. See *People v. Johnson*, 2013 IL 114639, ¶ 13. Therefore, we look to other authority to support our analysis.

[2]We note that *Guzman* contained a special concurrence and a dissent. In the special concurrence, Justice Holdridge stated that while he agreed that the trial court's judgment must be reversed, he would have reversed the judgment based on the trial court's failure to admonish the defendant of the immigration consequences of his guilty plea. *Guzman*, 2014 IL App (3d) 090464, ¶ 43 (Holdridge, J., specially concurring). Justice Holdridge stated that while this court and several other jurisdictions have reached the opposite conclusion, he believed that *Padilla* rejected the holding in *Delvillar*. *Id*. ¶¶ 46-47. Justice Holdridge reasoned that *Padilla* concluded that deportation could not be characterized as a collateral consequence and stated, "I find it incongruous and inappropriate to characterize deportation

¶ 35 Similarly, we find that the principles of *Delvillar* apply to this case. We do not agree with Greco's argument that *Padilla* overruled the decision in *Delvillar*. In *Padilla*, the Supreme Court stated:

> "Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a *Strickland claim concerning the specific risk of deportation.*" (Emphasis added.) *Padilla*, 599 U.S. at 366.

Thus, the *Padilla* Court refused to apply the direct versus collateral consequence distinction *only* in relation to counsel's constitutional requirements under *Strickland*. The Court in no way applied its holding to the constitutional requirements of the trial court. Although we understand the reasoning of Greco's argument, we do not read *Padilla* as overruling the principles in *Delvillar*. The holding in *Padilla* was purposefully narrow, and we decline to extend the Court's holding beyond that narrow purpose. Because *Delvillar* has not been overruled, we are bound by that decision and must follow it. Thus, even if we were to agree with Greco's argument, we are powerless to deviate from the decision of *Delvillar*. See *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 836 (2004). Therefore, pursuant to *Delvillar* and its progeny, the trial court was not constitutionally required to admonish Greco of the possible immigration consequences of his guilty plea. Because Greco failed to present a claim of constitutional deprivation based on this issue, his argument is not supported by the Act. See 725 ILCS 5/122-1(a)(1) (West 2008). Accordingly, we hold that the trial court did not err in dismissing Greco's postconviction petition based on the trial court's failure to admonish him pursuant to section 113-8 of the Criminal Code.

¶ 36 We next determine whether Greco's guilty plea and sentence are void and must be vacated because his sentence of seven years' imprisonment was less than the statutorily mandated minimum sentence of nine years' imprisonment.

¶ 37 Greco argues that his plea and sentence are void and must be vacated because he was sentenced to seven years' imprisonment, which he claims is less than the statutorily mandated minimum sentence of nine years' imprisonment. In this case, Greco pleaded guilty to criminal drug conspiracy. Greco was admonished that he was pleading guilty to criminal drug conspiracy predicated on delivery of a controlled substance of 15 to 100 grams. Greco points out that in the indictment, the charge of criminal drug conspiracy was predicated on several offenses of delivery of a controlled substance, including: delivery of 1 to 15 grams of cocaine; delivery of 15 to 100 grams of cocaine; and delivery of 100 to 400 grams of cocaine. Greco claims that the indictment was not amended to eliminate any of the offenses on which the criminal drug conspiracy charge was predicated. The factual basis for the guilty plea

---

as 'collateral' for fifth amendment purposes but not for sixth amendment purposes." *Id*. ¶ 47. Thus, Justice Holdridge stated that he would hold that the trial court's failure to warn the defendant of the immigration consequences of his guilty plea rendered the plea involuntary. *Id*. In the dissent, Justice McDade disagreed with the outcome of the case for other reasons, but agreed with the authoring justice that *Delvillar* remained good law and that the trial court's failure to properly admonish the defendant did not render his guilty plea involuntary. *Id*. ¶¶ 58-63 (McDade, J., dissenting). Justice McDade stated that even assuming Justice Holdridge's interpretation is correct, this court does not have the authority to overrule *Delvillar*. *Id*. ¶ 63.

shows that Greco was involved in a drug transaction in which 123.5 grams of cocaine were recovered by police. Greco notes that 123.5 grams of cocaine falls within the range of the charge of criminal drug conspiracy predicated on delivery of 100 to 400 grams of cocaine. Delivery of 100 to 400 grams of cocaine is punishable by 9 to 40 years' imprisonment. 720 ILCS 570/401(a)(2)(B) (West 2004). Greco argues that because the indictment was not amended to eliminate the offense of delivery of 100 to 400 grams of cocaine, and the factual basis for the guilty plea included an offense that falls within the range of 100 to 400 grams of cocaine, then the trial court was statutorily required to sentence him within the range of 9 to 40 years' imprisonment. Greco contends that his sentence of seven years' imprisonment is below the statutory minimum for criminal drug conspiracy predicated on delivery of 100 to 400 grams of cocaine. Thus, Greco argues that his guilty plea and sentence are void, and requests that this court vacate his guilty plea and remand the matter to the trial court for further proceedings.

¶ 38    In support of his argument, Greco relies on our supreme court's ruling in *People v. White*, 2011 IL 109616. In *White*, the defendant pleaded guilty to first-degree murder and possession of contraband while in a penal institution. *White*, 2011 IL 109616, ¶ 4. The trial court advised the defendant that he was pleading guilty to first-degree murder, which had a sentencing range of 20 to 60 years' imprisonment. *Id*. ¶ 5. At the plea hearing, the factual basis for first-degree murder showed that the defendant's accomplice discharged a firearm during the offense, which triggered a mandatory 15-year sentence enhancement for committing the offense while armed with a firearm. *Id*. ¶¶ 6, 18. With the addition of the mandatory 15-year sentence enhancement the defendant's mandatory minimum sentence for first-degree murder was 35 years' imprisonment. *Id*. ¶ 19. However, the trial court only sentenced the defendant to 28 years' imprisonment for first-degree murder. *Id*. ¶ 7.

¶ 39    Our supreme court held that the defendant's 28-year sentence was not valid and the defendant's plea agreement was void because the trial court failed to impose the mandatory 15-year sentence enhancement. *Id*. ¶¶ 29-31. The supreme court reasoned that the trial court does not have the authority to impose a sentence that does not conform with statutory guidelines, and the court exceeds its authority when it orders a sentence that is lesser or greater than what the statute mandates. *Id*. ¶ 20. The supreme court noted that the parties agreed and intended that the defendant serve a reduced murder charge without the 15-year sentence enhancement. *Id*. ¶ 22. However, the court held that the parties' intent does not control because the court cannot give the sentence effect if it is not authorized by law. *Id*. ¶ 23. The supreme court stated that "the legislature took away any discretion the State and the trial court had to fashion a sentence that does not include this mandatory enhancement." *Id*. ¶ 26. Thus, the supreme court remanded the matter to the trial court with instructions to allow the defendant to withdraw his guilty plea and proceed to trial. *Id*. ¶ 31.

¶ 40    In a special concurrence, Justice Theis noted that the supreme court has repeatedly stated that plea bargaining should be encouraged. *Id*. ¶ 37 (Theis, J., specially concurring). Justice Theis stated that the parties could have negotiated to exclude the 15-year sentence enhancement from the defendant's sentence by "amending the indictment and presenting a factual basis that referred to a dangerous weapon, rather than a firearm." *Id*. ¶ 41. However, the State did not amend the indictment and presented a factual basis that established that a firearm was used in the commission of the offense. *Id*. ¶¶ 37-38. Thus, the 15-year sentence enhancement applied. *Id*. ¶¶ 40-41.

¶ 41    In this case, Greco argues that pursuant to *White*, his guilty plea and sentence are void. Greco acknowledges that *White* was decided after his guilty plea became final, but he argues that it applies to his case retroactively. In response, the State argues that *White* established a new rule of law and does not apply retroactively to this case.

¶ 42    We note that there is a split of authority in our appellate court on the issue of whether *White* applies retroactively. Multiple districts have held that *White* did not announce a new rule because it was based on well-settled principles of Illinois law; thus, it applies retroactively. *People v. Smith*, 2013 IL App (3d) 110738, ¶¶ 12-13; *People v. Cortez*, 2012 IL App (1st) 102184, ¶ 16. On the other hand, the First District of our Appellate Court has repeatedly held that *White* announced a new rule because it resolved a lack of clarity in the law; thus, it does not apply retroactively. *People v. Young*, 2013 IL App (1st) 111733, ¶¶ 29, 32-33; *People v. Avery*, 2012 IL App (1st) 110298, ¶¶ 38-40.

¶ 43    We agree with the reasoning of *Young* and *Avery* and find that *White* does not apply retroactively. We find *Young* to be particularly persuasive. In *Young*, the defendant pleaded guilty to first-degree murder and attempted murder and was sentenced to 25 years' imprisonment and 10 years' imprisonment, respectively. *Young*, 2013 IL App (1st) 111733, ¶ 2. The defendant was admonished that the sentencing range for first-degree murder was 20 to 60 years' imprisonment, and the sentencing range for attempted murder was 6 to 30 years' imprisonment. *Id*. On appeal, the defendant argued that pursuant to *White*, his sentences and guilty pleas were void because they did not include the mandatory firearm enhancement. *Id*. ¶ 14.

¶ 44    This court held that although the defendant's sentences were not valid under *White* because they were below the statutory minimum, *White* announced a new rule and could not be applied retroactively to the defendant's case. *Id*. ¶¶ 19-24. This court reasoned that prior to *White*, there was "confusion as to whether the State could negotiate pleas that did not include the firearm enhancement for first degree murder, even where the use of a firearm is noted in the factual basis for the pleas." *Id*. ¶ 20 (citing *Avery*, 2012 IL App (1st) 110298, ¶ 39). This court held that *White* resolved that confusion and thus announced a new rule of law. *Young*, 2013 IL App (1st) 111733, ¶ 29.

¶ 45    Further, this court found that even if *White* did not announce a new rule, the defendant's argument would fail because he is estopped from challenging his plea agreement when the error was to his benefit. *Id*. ¶ 36. This court noted that " '[a]lthough plea agreements exist in the criminal justice structure, they are governed to some extent by contract law principles.' " *Id*. ¶ 37 (quoting *People v. Evans*, 174 Ill. 2d 320, 326 (1996)). When a plea is based on the promise or agreement of the State in any significant degree, so that it can be said to be part of the inducement or consideration, the promise must be fulfilled. *Id*. In that respect, the principal inquiry is whether the defendant received the benefit of his bargain. *Id*. Relying on those principles, this court stated as follows:

> "Here, defendant voluntarily pled guilty for the agreed-upon sentence of 35 years, but now, nearly a decade after his plea was entered, he asserts that his sentence was improper because he should have received a sentence with the firearm enhancement, which would have subjected him to a minimum sentence of 76 years, with the 25-year enhancement on both convictions. Defendant has received the benefit of his plea agreement, a significantly lower sentence. The State benefitted from the plea agreement by being spared the time and expense of trial. Defendant is now assuming

a position contrary to his agreement in his guilty plea in order to receive a benefit by withdrawing his guilty plea in hopes of obtaining a favorable result. Moreover, while defendant has received the benefit of a lesser prison sentence, if he were permitted to withdraw his plea at this stage, the State could be subjected to hardship on remand for trial since over 13 years have elapsed from the date of the offenses. Unlike *Donelson*, defendant's negotiated sentence is unable to be reformed, but we conclude the doctrine of estoppel should prohibit defendant from challenging a sentence after he has already received the benefit of a more lenient sentence." *Id.* ¶ 39.

¶ 46     We agree with the reasoning in *Young*. In *White*, the supreme court resolved confusion as to the State's ability to negotiate around a mandatory sentence enhancement in relation to first-degree murder. Because the confusion was resolved and the State's authority was clearly defined, a new rule was established. Greco now attempts to selectively apply certain principles in *White* to his case. Greco argues that this case is analogous to *White*, but then claims that he is only relying on *White* for the long-standing principle that a sentence is void if it does not conform with statutory requirements. However, Greco cannot have it both ways. In *White*, the supreme court reached its holding because the factual basis presented to the court established the facts that triggered the sentence enhancement and the indictment included a charge that contained said sentence enhancement. See *White*, 2011 IL 109616, ¶¶ 29, 41. That is the aspect of *White* that created a new rule. Greco claims that the same factual aspects are present in this case because he agreed to a lower offense and sentence, but the factual basis and indictment established his conviction for a greater offense and sentence. Because *White* established a new rule under this factual scenario, it cannot be retroactively applied to Greco's case.

¶ 47     Further, pursuant to *Young*, we find that Greco received the benefit of his bargain. The factual basis in this case shows that Greco could have been convicted of numerous offenses, including criminal drug conspiracy predicated on delivery of 100 to 400 grams of cocaine. However, Greco agreed to plead guilty to criminal drug conspiracy predicated on delivery of 15 to 100 grams of cocaine with a lesser sentence of seven years' imprisonment. In exchange, the State was spared the time and expense of trial. Now that Greco has learned that he is subject to deportation as a result of his conviction, he attempts to withdraw his guilty plea because he did not receive a *greater* sentence. He is taking a position contrary to the agreement in his guilty plea. It is unfortunate that Greco was unaware that he would be subject to deportation as a result of his conviction. However, notwithstanding Greco's knowledge, the State would have had no power to change the immigration consequences of Greco's conviction. Greco was subject to deportation as a result of his conviction based on federal law, which the State has no authority to negotiate. In other words, even if Greco and the State agreed that he would plead guilty to criminal drug conspiracy predicated on delivery of 100 to 400 grams of cocaine, and would be sentenced within the proper sentencing range, Greco still would have been subject to deportation as a result of his conviction. The bargain that was struck between Greco and the State was separate and distinct from any immigration consequences resulting from Greco's conviction. Further, the State would be subject to considerable hardship on remand for trial as the events that led to Greco's conviction took place approximately 13 years ago. Thus, Greco received the benefit of his bargain and is not able to withdraw his guilty plea. Accordingly, we hold that *White* cannot be applied retroactively and Greco's guilty plea and sentence are not void.

¶ 48        For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 49        Affirmed.