2020 IL App (2d) 190818
No. 2-19-0818
Opinion filed November 4, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-107 |
| ERNESTO DORADO, | ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Bridges concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Ernesto Dorado, appeals the trial court's denial of his motion to withdraw his guilty plea to unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). Pursuant to his plea agreement, he was sentenced to first-offender probation under section 410 of the Illinois Controlled Substance Act (Act) (*id.* § 410 (f), (g)), which, upon successful completion, results in the dismissal of the proceedings and is not considered a "conviction" "for purposes of disqualification or disabilities imposed by law upon conviction of a crime" (*id.* § 410(g)). Defendant now contends that his trial counsel was ineffective for failing to advise him of the effects his plea would have on his immigration status. He also contends that he did not receive the benefit

of the bargain in his plea negotiations when, despite the nature of first-offender probation under state law, he was potentially subject to federal immigration consequences. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      In May 2019, defendant pleaded guilty to unlawful possession of a controlled substance in exchange for first-offender probation and the dismissal of a traffic citation. The factual basis for the plea was that, on March 7, 2018, defendant was stopped for speeding and officers found a pill bottle containing hydrocodone in his vehicle. The pills were prescribed for defendant's daughter, and defendant indicated that he took the pills for pain without a prescription for them. Defendant at that time was a legal permanent resident of the United States and had a pending application for citizenship.

¶ 4      The trial court admonished defendant that, "[i]f you're not a citizen of the United States, you are hereby advised that conviction of the offense for which you've been charged may have the consequences of deportation, exclusion from admission to the United States or denial of naturalization under the laws of the United States." Defendant affirmed that he had talked to his attorney about the case and possible defenses, that he was satisfied with his attorney's representation, and that the State made no promises that were left out of the agreement. Defendant's attorney told the court that he had spoken to multiple immigration attorneys about the case and believed that defendant had been fully advised of the potential ramifications of his plea.

¶ 5      Defendant later moved to withdraw his plea, arguing that it was based on a false promise by the State because, while the Act provided for the discharge of the conviction upon completion of probation, the conviction would still stand under federal law, potentially resulting in adverse immigration consequences. He also alleged ineffective assistance of counsel.

¶ 6     At the hearing on the matter, defendant's trial counsel, Derrick Schmidt, testified that defendant told him that he was working with an immigration attorney and defendant gave Schmidt permission to speak with that person. Schmidt spoke with the attorney about defendant's status and consulted with two other immigration attorneys. Based on information from those consultations, Schmidt told defendant that, if he pleaded guilty, he was "deportable" and that "this is going to be an INS problem." Schmidt described the plea as "a very serious roadblock," and told defendant that he was "most likely going to be deported and that there would be proceedings." Schmidt went through the strengths and weakness of defendant's options, and defendant advised Schmidt that "he wanted to take the plea, that he would deal with the INS issues later." Defendant said that he wanted to get it over with and that there was the potential that he would marry his girlfriend, who was a United States citizen. Schmidt did not further discuss with defendant the potential effect of a marriage. Schmidt told defendant that he would be inadmissible to the United States based on the plea but did not specifically advise him of the possibility of mandatory detention during immigration proceedings. Schmidt was unsure if he specifically advised defendant about his ability to naturalize. Schmidt also told defendant that one of the immigration attorneys told Schmidt that there might be "some sort of *** temporary relief" available or that defendant might be able to enter a plea without mentioning the controlled substance. Schmidt was surprised that defendant wanted to take the plea. He said that he told defendant that he could have more time to reach a decision on the matter.

¶ 7     Defendant testified that, before he pleaded guilty, evidence regarding the case was requested in his pending citizenship application. He said that he had no understanding of what would happen to his immigration status because of the plea and that he "didn't think it was that bad that it was going to affect that." Defendant denied that Schmidt told him about the immigration

consequences of his plea or that he could have more time to decide whether he wanted to take the plea. He admitted that he told his immigration attorney about his arrest but said that the attorney did not provide details about the impact a plea would have on his application.

¶ 8 Applying *Najera-Rodriguez v. Barr*, 926 F.3d 343 (7th Cir. 2019), the trial court found that the conviction was not a conviction that, under federal law, would trigger removal from the United States. Regarding other possible immigration consequences, the court noted that the fact that defendant was sentenced to first-offender probation did not equate to a promise from the State about any such consequences. Regarding ineffective assistance, aside from applying *Najera-Rodriguez*, the court found that Schmidt consulted with immigration attorneys and adequately advised defendant. The court denied the motion to withdraw the plea, and defendant appeals.

¶ 9                                              II. ANALYSIS

¶ 10 Defendant contends that trial counsel was ineffective for failing to inform him of the immigration consequences of his plea. He contends that he is subject to mandatory removal based on his conviction of a drug offense or by virtue of potentially being found to be a drug abuser or addict (8 U.S.C. § 1227(a)(2)(B) (2012)) and that his counsel should have informed him that he would, with absolute certainty, be deported.

¶ 11 A defendant has no absolute right to withdraw his or her guilty plea. *People v. Baez*, 241 Ill. 2d 44, 110 (2011). "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *People v. Hughes*, 2012 IL 112817, ¶ 32. Likewise, a guilty plea must be voluntary and intelligent. *People v. Blankley*, 319 Ill. App. 3d 996, 1007 (2007). "One basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea." *People v. Glover*, 2017 IL App (4th)

160586, ¶ 39. " 'A defendant may enter a guilty plea because of some erroneous advice by counsel, but that fact alone does not destroy the voluntary nature of the plea ***.' " *Id.* (quoting *People v. Cunningham*, 286 Ill. App. 3d 346, 349 (1997)). Rather, " 'it must be shown that defendant was denied the effective assistance of counsel.' " *Id.* (quoting *Cunningham*, 286 Ill. App. 3d 346 at 349-50).

¶ 12     To establish that counsel was ineffective, a defendant must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Valdez*, 2016 IL 119860, ¶¶ 13-14. Counsel's conduct is deficient under *Strickland* if counsel fails to ensure that the defendant entered the plea voluntarily and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). To establish prejudice, a defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *People v. Manning*, 227 Ill. 2d 403, 418 (2008). The defendant bears the burden of establishing both parts of the *Strickland* test. *People v. Jones*, 219 Ill. App. 3d 301, 305 (1991).

¶ 13     In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court established that one aspect of constitutionally effective representation requires defense counsel to advise noncitizen defendants regarding the immigration consequences of a guilty plea, particularly the risk of being removed from the United States. *Id.* at 373-74. Thus, to fulfill his or her duties in advising a client during plea negotiations, counsel must inform the client that the plea carries a risk of deportation. See *id.* In addition, before accepting a guilty plea from a noncitizen, the court must inform the defendant that a conviction " 'may have the consequences of deportation,

exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2018).

¶ 14    Here, Schmidt consulted with multiple immigration attorneys and told defendant that the plea would subject defendant to deportation, that he would be inadmissible to the United States, and that there would be an "INS problem." The court also told defendant that a conviction "may" have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization. Meanwhile, Schmidt testified that defendant, who had also consulted with an immigration attorney, assured Schmidt that he wanted to take the plea bargain and deal with the immigration consequences later. Thus, the record supports the trial court's finding that Schmidt adequately advised defendant of the risk of deportation as a consequence of his plea and that defendant knowingly decided to take the plea and address the resulting immigration consequences later.

¶ 15    Defendant argues that the trial court's use of the word "may" was insufficient and argues that Schmidt should have told him with unequivocal and absolute certainty that he would be deported, either as a result of his conviction or based on a potential finding of drug abuse or addiction. But the record shows that Schmidt viewed the plea as a "a very serious roadblock" and clearly told defendant that, if he pleaded guilty, he was "deportable," was "most likely going to be deported," "there would be proceedings," and "this is going to be an INS problem." After such admonitions, defendant could not have reasonably believed that deportation was not a consequence of the plea.

¶ 16    Moreover, not only did Schmidt clearly tell defendant that, if he pleaded guilty, he was "deportable" or most likely would be deported, there was no certainty that defendant would actually be deported. Regarding removal as it relates to defendant's conviction, we have previously

held that counsel's performance might be deficient when counsel fails to inform a defendant that first-offender probation under section 410 will subject the defendant to mandatory removal. See *People v. Hoare*, 2018 IL App (2d) 160727, ¶¶ 27, 30. However, in *Najera-Rodriguez*, the Seventh Circuit recently held that convictions under section 402(c) of the Act are not convictions under federal law that render a defendant removable. *Najera-Rodriguez*, 926 F.3d at 347, 356. Thus, defendant was not subject to mandatory removal based on his conviction.

¶ 17　　Defendant suggests that the trial court erred in failing to address whether *Najera-Rodriguez* applied retroactively, but, at the time of the motion to withdraw the plea, no action had been taken seeking defendant's removal. Thus, retroactivity is not an issue. If a removal action were initiated, *Najera-Rodriguez* would be the controlling law interpreting the Act for purposes of federal law. See *Brough v. United States*, 454 F.2d 370, 372-73 (7th Cir. 1971) (finding no cases in which a statutory interpretation "was denied retroactive application in a criminal conviction" and applying a point of statutory interpretation retroactively). Defendant has not pointed to a case that would hold otherwise nor has he made a cogent argument that the reasoning of *Najera-Rodriguez* would not apply to him.

¶ 18　　Defendant argues that removal based on a potential finding of drug abuse or addiction was a possibility, and he also provides a list of additional potential immigration consequences that counsel failed to address with him, such as discretionary removal based on poor moral character, inability to post bond in removal proceedings, and delays in naturalization. But there were no certainties that any of those consequences would occur. *Padilla* does not require counsel to speculate about and advise a defendant of unclear immigration consequences that the defendant might or might not encounter. See *People v. Carranza-Lamas*, 2015 IL App (2d) 140862, ¶ 47. Immigration law is complex, and there are situations where the consequences of a plea are

uncertain or unclear. In such a situation, where the law is not succinct and straightforward, the duty of the defense attorney is more limited, and he or she need do no more than advise a noncitizen client that pending criminal charges might carry the risk of adverse immigration consequences. *Padilla*, 559 U.S. at 369. The Supreme Court in *Padilla* warned that, because pleas constitute "nearly 95% of all criminal convictions," courts "must be especially careful about recognizing new grounds for attacking the validity of guilty pleas." *Id.* at 372.

¶ 19    In any event, and as previously discussed, Schmidt communicated to defendant that deportation was a risk of the plea. Beyond that, *Padilla* required only that Schmidt advise defendant that there was a risk of adverse immigration consequences. Schmidt did that. Thus, Schmidt adequately advised defendant of the clear and direct potential consequences of his plea. The court also specifically admonished defendant of the clear potential consequences of the plea, including the possibility of removal or the denial of naturalization. Accordingly, Schmidt's representation was not deficient, and the court properly determined that defendant did not misapprehend the consequences of his plea.

¶ 20    Defendant next contends that he should be able to withdraw his plea because it was based on an unfulfillable promise under the Act that he would not have a "conviction" "for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." 720 ILCS 570/410(g) (West 2018). He argues that, because under federal law the conviction could subject him to deportation and other immigration consequences, he could not receive the benefit of his plea bargain.

¶ 21    In *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005), our supreme court explained that "[w]hen seeking relief from a guilty plea, either directly or collaterally, there are two separate, though closely related, constitutional challenges that may be made: (1) that the

plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty."

The latter challenge is rooted in the holding of *Santobello v. New York*, 404 U.S. 257 (1971), that the due process clause mandates that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. "The principal inquiry, in that respect, is whether the defendant has received the benefit of his bargain." *People v. Donelson*, 2013 IL 113603, ¶ 19.

¶ 22    Here, defendant was promised first-offender probation under the Act, and that is what he received. Under the Act, the conviction would be discharged for purposes of state law, but the legal effect of the conviction for immigration purposes was controlled by federal law. Thus, the bargain that was struck between defendant and the State for probation under state law was separate and distinct from any immigration consequences resulting from his conviction. See *People v. Greco*, 2014 IL App (1st) 112582, ¶ 47. The State has no power to change or negotiate the immigration consequences of defendant's conviction. *Id.* The State did not, and could not, promise that there would be no immigration consequences. Accordingly, the trial court correctly found that there was no unfulfillable promise made by the State.

¶ 23                            III. CONCLUSION

¶ 24    The trial court did not err when it denied defendant's motion to withdraw his plea. Accordingly, the judgment of the circuit court of Boone County is affirmed.

¶ 25    Affirmed.

**No. 2-19-0818**

| | |
|---|---|
| **Cite as:** | *People v. Dorado*, 2020 IL App (2d) 190818 |
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 18-CF-107; the Hon. C. Robert Tobin III, Judge, presiding. |
| **Attorneys for Appellant:** | John W. Heiderscheidt, of Godoy Law Office, of Lombard, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |