2022 IL App (2d) 210125-U
No. 2-21-0125
Order filed June 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-DV-1342 |
| JUAN TORRES-ORDUNO, | ) ) | Honorable George A. Ford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in dismissing the defendant's postconviction petition following a third stage evidentiary hearing as the record indicated the defendant was adequately advised of the risk of deportation as a consequence of his guilty plea.

¶ 2    The defendant, Juan Torres-Orduno, filed a petition for postconviction relief, asserting that under *Padilla v. Kentucky*, 559 U.S. 356 (2010), defense counsel was ineffective in failing to adequately advise him of the risk of immigration consequences prior to his guilty plea.  Following a third-stage evidentiary hearing, the trial court denied the petition.  The defendant appeals from that order.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On October 17, 2019, the defendant was charged by misdemeanor complaint with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), 3.2(a)(2) (West 2018)), and one count of interfering with the reporting of domestic violence (*id.* § 12-3.5(a)).  The complaints alleged that the defendant hit his wife in the face several times and took her phone to prevent her from calling the police.  On December 4, 2019, the defendant was charged in a different case with two counts of domestic battery (*id.* §§ 12-3.2(a)(1), 3.2(a)(2)) for allegedly pushing his wife to the ground and causing her to injure her arm.

¶ 5     On January 17, 2020, the defendant entered a fully negotiated plea agreement.  He pleaded guilty to one count of misdemeanor domestic violence, which was the first count in the first case. The State *nolle prossed* the remaining two counts in the first case and dismissed the second case. Pursuant to the agreement, the defendant was sentenced to one year of probation and 11 days' imprisonment, with credit for 11 days served.

¶ 6     At the plea hearing, the State explained that the plea offer was made in consideration of the defendant's limited criminal history and the wishes of the victim.  The State also noted that if the matter proceeded to trial, the victim would not likely appear.  The trial court asked the defendant if he was a U.S. citizen.  When the defendant indicated he was not, the trial court admonished him that a conviction to the charged offense "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States."  The defendant stated that he understood and that he still wished to proceed with his guilty plea.  After the trial court accepted the guilty plea, privately retained defense counsel stated:

"MR. BRUNDAGE [Defense Counsel]: Judge, I just want to make another record. I spoke with [the defendant] about the consequences of his plea as it relates to his immigration status at great length. He understands those consequences, if there are any, as they apply; and also his right to persist in his plea of not guilty, and set this case for trial *** and the pros and cons of doing that; and the possibilities of dispositions on the trial date, which may—could have included a possible dismissal, if there is not complaining witnesses, or witness problems. And he elected to go forward this morning in light of that advice, Judge. ***

THE COURT: *** What [defense counsel] just recited about your immigration consequences and the consequences of a plea, is that all correct?

THE DEFENDANT: Yes.

THE COURT: And you've discussed that with him?

THE DEFENDANT: Yes, I did.

THE COURT: And it is your wish to persist in your plea of guilty with that understanding; is that right?

THE DEFENDANT: Yes."

¶ 7    The defendant did not file a motion to withdraw his guilty plea or a direct appeal. On March 10, 2020, based on the guilty plea, the Department of Homeland Security detained the defendant and initiated removal proceedings.

¶ 8    On May 15, 2020, the defendant, represented by new counsel, filed a petition for postconviction relief, under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), claiming that his guilty plea was the result of ineffective assistance of defense counsel. The defendant argued that defense counsel was obligated to inform him of the specific

consequences of his guilty plea. The defendant asserted that defense counsel only generally informed him that the guilty plea would make him deportable. Defense counsel did not advise him that he would not be eligible for cancellation of removal, an available defense under certain circumstances, because he had had his green card for less than five years and that this made his deportation a near certainty. Attached to the petition were affidavits from the defendant and defense counsel.

¶ 9    In his affidavit, the defendant stated that defense counsel was aware he was not a U.S. citizen and that he had a green card. Defense counsel told him repeatedly between January 6 and 17, 2020, in general terms, that his guilty plea would carry immigration consequences. The defendant stated that defense counsel did not tell him about possible defenses in immigration court or discuss his ineligibility for cancellation of removal. Defense counsel never stated that he would definitely be deported, that deportation was a certainty, or that he would have no defenses to being deported. Finally, the defendant indicated that:

> "I had assumed at the time I was pleading guilty that I would worry later about the fact that I was deportable. Had I known that there would be no later, I would have not pleaded guilty. I would not have liked being in jail waiting for my Domestic Battery trials, but pleading guilty and thereby guaranteeing my deportation was something I absolutely could not have accepted."

¶ 10    Defense counsel, in his own affidavit, averred that when he provided counsel to the defendant regarding the guilty plea, he knew the defendant was not a U.S. citizen and had a green card. He knew that the guilty plea would make the defendant deportable. He told this to the defendant on multiple occasions in January 2020. He never told the defendant that there would be no defense in immigration court because, since he did not practice immigration law, he did not

know that that would be the full consequence of the guilty plea. He did not know that a defense to deportation could be based on how long the defendant had his green card and he never asked the defendant how long he had his green card.

¶ 11 On June 15, 2020, the trial court advanced the petition to the second stage. On September 18, 2020, the trial court denied the State's motion to dismiss and set the case for a third-stage evidentiary hearing.

¶ 12 On February 19, 2021, the trial court held an evidentiary hearing. The defendant testified that, prior to the date of his guilty plea, defense counsel never spoke to him about immigration consequences. On the day he pleaded guilty, he explained to defense counsel that he had a family, a business with employees, and contracted work that needed to be done. Defense counsel told him the quickest way to get out of jail was to plead guilty. The defendant testified that defense counsel stated only that there may be some immigration consequences and that the defendant should check with an immigration attorney. Defense counsel never talked about cancellation of removal or how long the defendant had his green card. Defense counsel never told him he would be deported or substantially likely to be deported. The defendant testified that he had a wife, five children, a small business, and employees. If he had known he would be deported he never would have taken the plea. When defense counsel told him the plea would make him deportable, he did not really know what that meant. He was in a rush and under pressure to get back to his family and business. Two months after his plea he was arrested in his removal case and had been in custody ever since.

¶ 13 Defense counsel testified that when he was retained by the defendant, he knew the defendant had a green card but did not how long he had it. He was not an immigration attorney but he knew that the defendant's guilty plea would have serious immigration consequences such as deportation and denial of citizenship. On January 9, 10, 14, and 17, 2020, he told the defendant

that if he was found guilty, he would be deportable. On the day of the plea, he told the defendant that there would be serious immigration consequences by pleading guilty, such as deportation. He believed the defendant was looking at a bad outcome either way. Defense counsel acknowledged that he used the word "deportable" and never said "You will be deported." He never discussed cancellation of removal with the defendant because he did not know what that was. He did not know that the length of holding a green card had any significance to immigration relief. He knew the defendant took the plea because he was on the "horns of a dilemma" having a business and five young children. Defense counsel testified that had he known the defendant would have no defense to deportation, he would have given the defendant different advice. It would have been far better for the defendant to stay in custody awaiting trial than to end up being deported.

¶ 14    The trial court then questioned defense counsel:

"Q.  *** I just want to understand this, but you had indicated to the defendant that there was severe consequences to him pleading guilty; is that correct?

A.  Yes.

Q.  And his concern was whether or not he could become a citizen? Is that correct?

A.  I do remember him asking me that. And then I didn't dismiss it. But I'm like no. I said, yes, that, of course, but, also, deportation.

Q.  You indicated to him that it was not only the risk of him not being a citizen, but he would, also, be deported?

A.  Right. Because I was more—Yes. That's true."

¶ 15    Brian Seyfried, an immigration attorney testified as an expert in immigration removal defense. Cancellation of immigration removal was a type of relief offered to those who already had their green card if they met certain criteria. If it was granted, the person was released from

detention and the removal case was closed. To be eligible for cancellation of removal, a person must have had a green card for more than five years, been lawfully admitted to the U.S. for more than seven years and cannot have been convicted of aggravated felonies. Further, a person was only eligible to exercise a right to cancellation of removal once. Seyfried testified that the defendant was his client in immigration court. The defendant had been detained since March 2020 and had not been granted bond. He was not eligible for cancellation of removal. The immigration court had been granting continuances pending the ruling on the defendant's postconviction petition.

¶ 16    Following argument, the trial court found defense counsel's testimony credible and that defense counsel spoke with the defendant about immigration consequences on January 9, 10, 14, and 17, 2020. The trial court found that defense counsel informed the defendant that the plea would make him deportable. The trial court noted that, in his affidavit, the defendant stated that he would worry about deportation later. The trial court also found that defense counsel did not have a duty to advise the defendant about cancellation of removal or attach a probability to the defendant being deported. The trial court concluded that defense counsel's performance was not deficient and that the claim for ineffective assistance of counsel thus failed. This timely appeal followed.

¶ 17                            II. ANALYSIS

¶ 18    On appeal, the defendant argues that the trial court erred in denying his postconviction petition. The Act provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). The Act sets forth three stages of review. At the first stage, the trial court may summarily

dismiss a postconviction petition as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed, it advances to the second stage.

¶ 19    At the second stage of postconviction proceedings, the State may move to dismiss a petition or an amended petition pending before the court. *Id.* § 122-5. If that motion is denied, or if no motion to dismiss is filed, the State must answer the petition. *Id.* At this stage, the trial court must determine whether the petition and the accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If the petition satisfies this standard, the defendant is entitled to a third-stage evidentiary hearing at which the trial court acts as the fact finder and determines whether the evidence introduced demonstrates that the defendant is entitled to relief. *Id.* ¶ 34.

¶ 20    At the third stage of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a trial court's decision unless it is manifestly erroneous. *Id.* "Manifest error is error that is 'clearly evident, plain, and indisputable.' " *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)). However, our review is *de novo* if there are no findings of fact or credibility determinations involved—*i.e.*, where no new evidence was presented, the issues involved pure questions of law, and the postconviction judge did not have any special expertise or familiarity with the issues. *Pendleton*, 223 Ill. 2d at 473.

¶ 21    A defendant does not have an absolute right to withdraw his guilty plea. *People v. Dorado*, 2020 IL App (2d) 190818, ¶ 11. However, one established basis for the withdrawal of a guilty

plea is where defense counsel gives the defendant advice, prior to entering the plea, that is so insufficient that it amounts to ineffective assistance of counsel. *Id.* Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant. *Id.* To demonstrate deficient performance, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 22     The two-part *Strickland* test applies to a claim that trial counsel was ineffective during the guilty-plea process. *People v. Brown*, 2017 IL 121681, ¶ 26. For a guilty-plea defendant, the performance prong of the test remains the same. *Id.* However, as to the prejudice prong, a guilty-plea defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* A defendant's conclusory allegation that he would not have pled guilty and would have demanded trial is insufficient to establish prejudice for purposes of an ineffectiveness claim. *Id.* When a defendant's claim of ineffective assistance of trial counsel involves improper advice about the consequences of pleading guilty, the defendant must establish that a decision to reject the guilty plea and proceed to trial would have been rational under the circumstances. *Id.* ¶ 40. The court must consider "the specific

circumstances of each case when assessing a guilty-plea defendant's ineffective assistance claim based on his understanding of the consequences of pleading guilty." *Id.* ¶ 41.

¶ 23 We decide first whether defense counsel met the performance prong of the *Strickland* test. In *Padilla*, "the Supreme Court held that, to provide effective assistance to a noncitizen defendant, defense counsel must satisfy a limited but positive duty to advise the defendant of the immigration consequences of a guilty plea. The specifics of the duty depend on how clear it is that the conviction will result in deportation." *People v. Dominguez*, 2016 IL App (2d) 150872, ¶ 11. When the Immigration and Nationality Act (Immigration Act) (8 U.S.C. § 1221 *et seq.* (2018)), is "succinct, clear, and explicit" in defining the consequence for a particular conviction, defense counsel "must inform [a] client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. However, "[w]hen the [immigration] law is not succinct and straightforward ***, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. Defense counsel not only has a duty to give correct advice regarding deportation but is also ineffective when he or she gives affirmative misadvice or fails to give any advice at all. *People v. Valdez*, 2016 IL 119860, ¶ 16.

¶ 24 In the present case, the immigration law was succinct, clear, and explicit. Under the Immigration Act, any alien who is convicted of a crime of domestic violence "is deportable" (8 U.S.C. § 1227(a)(2)(E)(1) (2018)) and "shall, upon order of the Attorney General, be removed" (*id.* § 1227(a)). At the plea hearing, defense counsel stated that he explained the immigration consequences and the pros and cons of going to trial and even the possibility of a dismissal if witnesses failed to appear, and that the defendant still elected to take the plea. Further, at the evidentiary hearing, defense counsel testified that he informed the defendant on four occasions,

including on the day of the plea, that the guilty plea would make him deportable. The trial court found this testimony to be credible. Under the circumstances in this case, defense counsel thus satisfied his obligations under *Padilla*.

¶ 25    The defendant asserts that defense counsel's advice that he was "deportable" was insufficient. The defendant notes that the immigration law was very clear that, because he had been a legal permanent resident for less than five years, he was not eligible for cancellation of removal (see *id.* § 1229b(a)(1)) and thus he was subject to mandatory deportation. The defendant argues that defense counsel should have advised him that he was not eligible for cancellation of removal and that he would have no defense to deportation.

¶ 26    In so arguing, the defendant relies on this court's decision in *People v. Hoare*, 2018 IL App (2d) 160727. In *Hoare*, the defendant pleaded guilty to unlawful possession of cocaine and was sentenced to 24 months' first-offender probation under section 410(a) of the Illinois Controlled Substances Act (720 ILCS 570/410(a) (West 2012)). *Id.* ¶ 2. Under that section, if probation was successfully completed, the charges were dismissed and the disposition was not considered a criminal conviction under Illinois law. *Id.* (citing 720 ILCS 570/410(f), 410(g) (West 2012)). The defendant subsequently filed a postconviction petition alleging that trial counsel was ineffective in failing to advise him that his guilty plea and section 410 probation would result in his deportation even though there had been no conviction for state law purposes. *Id.* ¶ 8. The trial court summarily dismissed the petition. *Id.* ¶ 13.

¶ 27    On appeal, this court reversed and remanded for second stage proceedings. *Id.* ¶ 49. We held that the defendant had stated the gist of a constitutional claim of ineffective assistance. *Id.* ¶ 22. We explained that, under the Immigration Act, it was clear that a conviction for possession of cocaine made the defendant deportable, and that 410 probation was still a "conviction" for

immigration purposes. *Id.* ¶ 21 (citing 8 U.S.C. § 1227(a)(2)(B)(i), 1101(a)(48)(A) (2012)). Under these circumstances, we held that trial counsel "was obligated to give [the defendant] more than the tentative and vague advice that his plea 'could result' in 'adverse immigration consequences.' " *Id.* ¶ 22. Rather, "[c]ounsel was obligated to tell the defendant the concrete and easily ascertained truth: that the plea would strip the defendant of any defense to deportation." *Id.*

¶ 28  The defendant's reliance on *Hoare* is unpersuasive. In *Hoare*, trial counsel gave the defendant only generic advice that his guilty plea could have adverse immigration consequences. *Id.* ¶ 10. This was insufficient because the Immigration Act was clear that defendant's 410 probation was still a deportable conviction for immigration purposes. When taken in context, the above quote from *Hoare* does not stand for the proposition that defense counsel has an obligation to provide advise as to whether or not a defendant would have any defenses to deportation, such as cancellation of removal. Rather, the *Hoare* court was simply emphasizing the point that generic and vague advice was insufficient and that trial counsel was required to advise the defendant that the plea made him deportable. In the present case, the immigration law was clear and defense counsel specifically advised the defendant that his guilty plea would make him deportable. *Hoare* simply does not support a conclusion that defense counsel was also required to advise the defendant about his eligibility for cancellation of removal.

¶ 29  The defendant also argues that, in denying his postconviction petition, the trial court's reliance on this court's decision in *People v. Dorado*, 2020 IL App (2d) 190818, was misplaced. We disagree. In *Dorado*, the defendant pleaded guilty to possession of a controlled substance in exchange for first-offender probation and the dismissal of a traffic citation. *Id.* ¶ 3. Trial counsel advised the defendant that his guilty plea would make him deportable, that it was going to cause an INS problem, that the plea was a very serious roadblock, and that deportation proceedings were

likely to occur. *Id.* ¶ 6. The defendant later filed a motion to withdraw his guilty plea, arguing that trial counsel was ineffective in failing to inform him of the consequences of his guilty plea. *Id.* ¶ 10. The trial court denied the motion to withdraw the guilty plea, noting that trial counsel had adequately advised the defendant. *Id.* ¶ 8.

¶ 30     On appeal, the defendant argued that trial counsel had not adequately informed him of the immigration consequences of his plea. *Id.* ¶ 10. This court held that trial counsel properly advised the defendant that his plea would subject him to deportation, that he would be inadmissible to the United States, and that there would be an INS problem. *Id.* ¶ 14. We further noted that the trial court advised the defendant that there would be immigration consequences and the record indicated that the defendant had wanted to take the plea and deal with immigration consequences later. *Id.*

¶ 31     *Dorado* supports the dismissal of the defendant's petition. As in *Dorado*, the defendant in this case was advised that his guilty plea would make him deportable and that it could prevent him from ever becoming a U.S. citizen. This case is also similar to *Dorado* in that, in his affidavit in support of his postconviction petition, the defendant indicated that at the time he pleaded guilty he thought that he "would worry later about the fact that [he] was deportable." See *id.* ¶ 14 (*Dorado* defendant stated that wanted to take the plea and would deal with immigration consequences at a later time). We acknowledge that trial counsel in *Dorado* additionally advised the defendant that the guilty plea would cause an INS problem, that he was "most likely going to be deported," and that "there would be proceedings." *Id.* ¶ 15. This is a distinction without a difference, however, as the *Dorado* court merely found these warnings sufficient under *Padilla* but did not hold that any magic words were required. While the warnings in this case were not as extensive as those in *Dorado*, the record shows that the defendant was informed on four separate occasions that his guilty plea would make him deportable. Thus, the record supports a determination that the

defendant was adequately advised of the risk of deportation resulting from his guilty plea and that the defendant knowingly entered the plea.

¶ 32    The defendant notes that, in *Dorado*, we commented that the defendant in that case had provided a list of additional immigration consequences that trial counsel failed to advise him on, "such as discretionary removal based on poor moral character, inability to post bond in removal proceedings, and delays in naturalization." *Id.* ¶ 18.  We concluded that "*Padilla* does not require counsel to speculate about and advise a defendant of *unclear* immigration consequences that the defendant might or might not encounter." (Emphasis added.) *Id.*  The defendant takes this quote to imply that, because it was *clear* that he was not eligible for cancellation of removal, that defense counsel was required to so advise him concerning that topic.  We decline to accept this interpretation, as cancellation of removal was not at issue in *Dorado* and the defendant's assertion would be an improper extension of our decision in that case.  Accordingly, as we have determined that defense counsel did not provide deficient representation, we need not reach the issue of prejudice (*Enis*, 194 Ill. 2d at 377), and we affirm the trial court's denial of the defendant's postconviction petition.

¶ 33                        III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 35    Affirmed.